**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **A.J. and R.J., minor children, by**<br>**Rahul Julka, their father and next friend,**<br>**RAHUL JULKA, and KOMAL JULKA,** | ) ) ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **vs.** | ) | |
| | ) | |
| **BUTLER ILLINOIS SCHOOL DISTRICT 53,**<br>**THE BOARD OF EDUCATION FOR BUTLER**<br>**SCHOOL DISTRICT 53, HEIDI**<br>**WENNSTROM (in personal and official**<br>**capacity), KELLY VOLIVA (in personal and**<br>**official capacity), ALAN HANZLIK (in**<br>**personal and official capacity), ROBBINS**<br>**SCHWARTZ, LIBBY MASSEY, CAROLINE**<br>**ROSELLI, VANDANA BADLANI, and**<br>**RAVI BADLANI,** | ) ) ) ) ) ) ) ) ) ) ) ) | **Case No. 17 C 2849** |
| | ) | |
| **Defendants.** | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

MATTHEW F. KENNELLY, District Judge:

Rahul and Komal Julka's children were students in Butler School District 53.

District administrators concluded that the Julkas had wrongfully obtained the National

Geographic Bee's questions in advance to give their children an advantage in the

competition. They imposed sanctions and put letters in the students' files detailing the

alleged misconduct. The Julkas contend that the administrators' actions violated their

federal constitutional rights and state tort law. The defendants have moved to dismiss

the Julkas' complaint.

**Background**

The following facts are taken from the allegations of the Julkas' complaint, which the Court takes as true for purposes of this motion.

Each year, students in District 53 have the opportunity to participate in national academic competitions. One of these is the National Geographic Bee, commonly referred to as the "GeoBee." The Julkas' children, A.J. and R.J., wanted to participate in the 2016 GeoBee. At the time, A.J. was nine years old and R.J. was eleven. The children's mother, Komal Julka, asked her brother to help them study. (For ease of reference, the Court will refer to the father as Rahul, the mother as Komal, and the two together as the Julkas.) Komal's brother found a link on the GeoBee website that offered additional test preparation resources for purchase. Komal provided him with her credit card to purchase these resources.

Komal told Vandana and Ravi Badlani, two parents whose students also participated in the GeoBee, that they had obtained additional study resources. (The Court will refer to the Badlanis by their first names for ease of reference or to the Badlanis when referring to both.) On a phone call, the Badlanis asked Komal to read the questions from the test preparation resource. Vandana concluded that what Komal had obtained was not a test preparation resource, but the actual questions for the upcoming GeoBee competition. What Komal did not know at the time was that Ravi Badlani recorded Vandana's end of the call with Komal.

Vandana demanded that Komal inform the school district and the GeoBee that they had the questions for the upcoming competition. (The District later alleged that the Julkas had obtained the questions by misrepresenting themselves as homeschoolers to

gain access to the test questions.)  On January 15, 2016, the Julkas decided to withdraw their children from the GeoBee.  Then, on January 19, Komal went to speak with the school principal, Kelly Voliva, about Vandana's accusation.  Komal was told to wait until the superintendent, Heidi Wennstrom, arrived.

The Julkas allege that Komal told Voliva and Wennstrom the same facts recited so far:  the Julkas believed the materials they had obtained were study aids, not the questions themselves, and there had been a misunderstanding.  Wennstrom replied that she had heard a different story from the Badlanis.  She then asked Komal to leave the office for several hours.  When Komal returned, she found that Voliva and Wennstrom had been joined by Vandana Badlani.  Komal alleges that she reiterated her story to them again, but they disagreed and questioned her.  After the conversation, Wennstrom commenced an investigation.  The Julkas allege that during the investigation, R.J., their eleven-year-old, was questioned by Voliva and another administrator.

On February 8, Wennstrom issued a letter to the Julkas that stated:  "The academic dishonesty and cheating which you and your children engaged put all of the District students participating in the contest and the District at risk of being banned from current and future National Geographic Bee contests."  First Am. Compl. ¶ 54.  The February 8 letter was added to R.J. and A.J.'s academic files.  On the same day, Wennstrom issued a public statement that announced the results of the investigation, stating:  "These instances of academic dishonesty by a couple parents cast a shadow on the District's reputation and could potentially lead others to question the integrity of our achievement results."  D.E. 67, Def.'s Ex. H (Wennstrom Feb. 8, 2016 e-mail).

3

The Julkas filed a grievance on February 11.  The Julkas allege that District 53 failed to follow its established Uniform Grievance Procedure (UGP) in numerous ways during the grievance proceeding.  First, the UGP names two particular individuals who may serve as complaint managers, but the District instead selected Alan Hanzlik, who was not identified in the UGP.  Next, the District hired Libby Massey, an attorney with the Robbins Schwartz law firm, to serve as an (ostensibly) independent investigator, even though Robbins Schwartz counts the school district as a client.  Third, the District relied upon Caroline Roselli, another Robbins Schwartz attorney, as a mediator.

During a March 7 meeting held to attempt to resolve the dispute, Wennstrom informed the Julkas that she had heard a recording of the January phone call between Komal and Vandana.  The Julkas allege that Wennstrom "decided to believe Badlani" after hearing the recording of the phone call.  First Am. Compl. ¶ 67.  The parties did not reach a resolution during the March meeting.

The Julkas allege that Massey then began to investigate the allegations against them.  They allege she interviewed several witnesses and reviewed materials the Julkas provided.  But they also contend that Massey did not permit them to be present during the questioning of witnesses or to review the other evidence she received.

The Julkas allege that the defendants issued a written decision on April 15 (the April decision). The April decision found that the February 8 letter inserted into the Julka children's files improperly stated that they children had engaged in academic dishonesty.  The decision directed the District to replace the February 8 letter with a more accurate document that did not state that R.J. and A.J. engaged in misconduct. The April decision otherwise affirmed the district's exclusion of R.J. and A.J. from future

academic competitions.  The Julkas also allege that the April decision offered the possibility of removing the sanction letter from their children's files if they transferred out of the district.  The Julkas later filed a complaint in state court, seeking administrative review of the District's resolution of their grievance.  *Julka v. Paskalides*, 2016 MR 001612 (Ill. Cir. Ct. Dec. 12, 2016).  Before the state court could reach a decision on the Julkas' complaint, the School District removed the letter from the students' files.[1]  The state court dismissed the case as moot.  *See* D.E. 72, Def.'s Ex. N, at 6 (Aug. 21, 2017 court transcript).

The Julkas also allege that, after requesting copies of the children's records during the pendency of the state court lawsuit, they learned that new documents had been added to R.J.'s student file.  The Julkas say that the documents falsely stated that R.J. engaged in academic dishonesty in 2015—before the entire GeoBee course of events.  The Julkas contend that the school district defendants must have added the 2015 materials to R.J.'s file in May 2016, because the letter was not in the April 2016 version of the file.  The Julkas allege that the events described in the 2015 materials are baseless, incomplete, and not credible, as one of the items included is a letter that contains misspellings and appears to contain the handwriting of two different people.

In April 2017, the Julkas filed the present lawsuit.  Three groups of defendants are named in the Julkas' amended complaint:  the school district defendants (the Butler School Board, the Butler School District, Wennstrom, Voliva, and Hanzlik); the law firm defendants (Massey, Roselli, and Robbins Schwartz); and the Badlanis (Vandana and Ravi Badlani).  The Julkas assert seven claims on behalf of themselves and their

children: violation of the Due Process Clause (count 1), violation of the Equal Protection Clause (count 2), retaliation in violation of the First Amendment (count 3), civil conspiracy (count 4), intentional infliction of emotional distress (count 5), and spoliation of evidence (count 6). In count 7, the plaintiffs ask the Court for injunctive relief to remove any negative materials pertaining to the GeoBee from R.J. and A.J.'s student files.

## Discussion

Each of the three groups of defendants—the school board defendants, the law firm defendants, and the Badlanis—has moved to dismiss the Julkas' complaint for failure to state a claim. Fed. R. Civ. P. 12(b)(6). To defeat a motion to dismiss, a plaintiff must allege a facially plausible claim, one that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 667, 678 (2009). The defendants argue that the Julkas' claims do not meet this standard. Some of the defendants also present individual arguments for why dismissal is warranted.

## I. Official capacity claims

First, the school district defendants have moved to dismiss the District 53 School Board as a party on the ground that it is not a suable entity. The Court denies the motion, as Illinois law plainly permits the plaintiffs to sue a school board. *See Veazey v. Bd. of Educ. of Rich Twp. High Sch. Dist. 227*, 2016 IL App (1st) 151795 ¶ 27, 59 N.E.3d 857, 865 ("a board of education has the power under the School Code to sue and be sued in court proceedings"). *See also* 105 ILCS 5/10-2. The school district defendants also urge dismissal of the claims against Wennstrom, Voliva, and Hanzlik in

their official capacities. The practice of naming an officer in her official capacity "represent[s] only another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985). The Julkas, who have also named the District and the School Board as defendants, concede this point. Pls.' Resp. to School Dist. Defs.' Mot. to Dismiss at 3. The Court agrees that naming these defendants in their official capacities is redundant and therefore dismisses the official-capacity claims against each of them.

## II.    Color of law

Second, Massey, Roselli, and Vandana have moved to dismiss counts 1 through 3 as directed against them on the ground that they are private citizens who did not act under color of state law. To establish a section 1983 claim against a defendant, the plaintiff must adequately allege the defendant acted under color of state law. *McNabola v. Chicago Transit Auth.*, 10 F.3d 501, 513 (7th Cir. 1993). The Julkas contend Massey and Roselli, as well as Vandana, acted under color state law by conspiring with the school district defendants. "[P]rivate defendants can be subject to a [section] 1983 action only if they conspired with the state actors to violate [the plaintiffs'] civil rights." *Johnson v. Dossey*, 515 F.3d 778, 782 (7th Cir. 2008). For reasons discussed below, however, the Court concludes plaintiffs have not adequately alleged such a conspiracy. The Court therefore dismisses counts 1 through 3 as to Vandana, but not Massey and Roselli, as there is a separate  basis to hold them liable under section 1983.

As to Massey and Roselli, "[a]nyone whose conduct is 'fairly attributable to the state' can be sued as a state actor under § 1983." *Filarsky v. Delia*, 566 U.S. 377, 383 (2012) (quoting *Lugar v. Edmonson Oil Co, Inc.*, 457 U.S. 922, 937 (1982)). In *Hefley v.*

*Bruch*, 276 F. App'x 506 (7th Cir. 2008), the Seventh Circuit noted that "lawyers do not act under color of law merely by representing their clients." *Id.* at 507. *See also Hutcherson v. Smith*, 908 F.2d 243, 245 n.2 (7th Cir. 1990) (same). Rather, to determine whether an attorney working on behalf of a municipality acts under color of state law, the Court must look to the attorney's function in carrying out his or her responsibilities to the municipality. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 825 (7th Cir. 2009).

In *Rodriguez*, the Seventh Circuit noted that the Supreme Court had "applied this functional approach to determine whether a particular individual acted under the color of state law in a variety of contexts," including an attorney's conduct as a public defender. *Id.* at 825 n.13. The functional analysis considers the relationship between the state, the private entity, and the individual. *Id.* at 826. The setting in which the interaction occurs is also significant. *Id.* The Seventh Circuit concluded in *Rodriguez* that a private hospital acted under color of state law when it treated a prisoner, because the hospital had an "ongoing relationship" with the prison to provide medical services "tied to the state's responsibility for [the prisoner's] overall medical care." *Id.* at 831. The Court noted that the prisoner, given his incarceration, was not free to consider another hospital. *Id.* at 826-27.

Here, Massey and Roselli, through their employment, both performed functions that render it plausible that they acted under color of state law. The Julkas allege that Massey acted as an investigator for the District and Roselli acted as a mediator during the District's grievance procedure. *See Polk County v. Dodson*, 454 U.S. 312, 325 (1981) (holding that an attorney working as a public defender may act under color of

state law while performing administrative and possibly investigative functions).  Both Massey's investigation and Roselli's mediation supported the school district defendants' efforts to facilitate the grievance process.  The Julkas were bound to accept these services, as they did not have the choice to select another investigator, mediator, or grievance process.  Thus a reasonable inference may be drawn that Massey and Roselli each functioned in a governmental capacity and acted under color of state law.

Third, Robbins Schwartz has also moved to dismiss counts 1 through 3 on the ground that the Julkas have not alleged a basis for its liability as a private entity under section 1983.  The Julkas assert that *Shields v. Illinois Department of Corrections*, 746 F.3d 782, 789 (7th Cir. 2014), permits a private corporation to be held liable under section 1983 on a theory of *respondeat superior* for its employees' misconduct.  As discussed above, Julkas have adequately alleged for purposes of a Rule 12(b)(6) motion that Massey and Roselli acted under color of state law.  But the Julkas wrongly rely upon *Shields* as support for their claim against the Robbins Schwartz firm, for which Massey and Roselli worked.

The Seventh Circuit has held that "a private corporation is not vicariously liable under section 1983 for its employees' deprivations of others' civil rights."  *Iskander v. Village of Forest Park*, 690 F.2d 126, 128 (7th Cir. 1982).  Rather, to recover against Robbins Schwartz, the plaintiffs must allege that their constitutional injuries were caused by a policy, practice, or custom of the law firm.  *Shields*, 746 F.3d at 796.  Thus *Shields* expressly rejects the *respondeat superior* theory that the Julkas offer.  And they have not alleged that Robbins Schwartz had a policy, practice, or custom that caused a deprivation of any of the plaintiffs of their constitutional rights.

The Julkas also confusingly assert that the relationship between the District 53 and Robbins Schwartz "circumvents" the need to show a policy or practice to incur liability. Without more, the Julkas' argument is insufficient to rope the law firm into section 1983 liability. The law firm is entitled to dismissal of counts 1 through 3.

## III.    Due Process Clause

The Court next reviews the arguments regarding the sufficiency of the seven claims asserted against the remaining defendants.[2] In doing so, the Court declines any suggestion to convert the Badlanis' motion to dismiss into a motion for summary judgment.

In count 1, the Julkas allege that Massey, Roselli, the District 53, the School Board, Wennstrom, Voliva, and Hanzlik violated the due process rights of R.J. and A.J. The Julkas assert a procedural due process claim, contending that the defendants deprived R.J. and A.J. of a protectable interest without proper procedure, as opposed to a substantive due process claim, in which a plaintiff asserts the government acted arbitrarily, irrespective of the procedure used. *See Doe v. City of Lafayette*, 377 F.3d 757, 768 (7th Cir. 2004). To state a claim for violation of procedural due process, the Julkas must allege that they suffered the deprivation of a protectable interest by the government and that the procedure accompanying that deprivation was inadequate. *Id.*

The Julkas' claim founders on the requirement of a liberty or property interest

---

[2] In support of their motion to dismiss, the defendants rely on Judge Ronald Guzman's decision in *Jain v. Butler Illinois School District 53*, 17 C 0002 (N.D. Ill. Sept. 5, 2017). The Jains are another family that was accused of similar misconduct by the school district defendants and then sued them. But the decision the defendants offer is an order dismissing a complaint without prejudice. The plaintiffs in *Jain* filed an amended complaint, and the litigation is still ongoing.

protected by the Due Process Clause. They cite a number of deprivations: the school district defendants stigmatized them; they kicked A.J. and R.J. off of the GeoBee; they deprived the Julkas of the procedures guaranteed by the District's Uniform Grievance Procedure; and they imposed penalties that were described as a "severe sanction." "[T]he range of interests protected by procedural due process is not infinite," *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 570 (1972), and none of the interests that the plaintiffs have put forward fall within the protected range.

## A. Reputational interest

First, the Julkas contend that there is a protected liberty or property interest affected whenever the government's conduct affects a person's "good name, reputation, honor, or integrity[.]" Pls.' Resp. to School Dist. Defs.' Mot. to Dismiss at 5 (quoting *Roth*, 408 U.S. at 573). A bare injury to reputation, however, does not suffice. *See, e.g., Alston v. City of Madison*, 853 F.3d 901, 909 (7th Cir. 2018). Rather, a plaintiff must adequately allege what is sometimes referred to as "stigma-plus." A plaintiff may be able to assert a viable due process claim on a stigma-plus theory by alleging that the government defamed her *and* that the defamation imposed an "alteration of legal status," for example, as infringement of an employee's "liberty of occupation." *Townsend v. Vallas*, 256 F.3d 661, 669-70 (7th Cir. 2001).

The Court assumes for present purposes that the Julkas have adequately alleged defamation, but they have not alleged that the defamation was accompanied by a relevant "alteration of legal status." The closest they come is their contention that Rahul had to leave his job. But even "defamation *coupled with a firing* is not sufficient" to state a stigma-plus claim. *Id.* at 670 n.9 (emphasis added). Rather, the plaintiff must

show that the defamation "had the effect of blacklisting the employee from employment in comparable jobs." *Id.* at 670. *See also, e.g., Hojnacki v. Klein-Acosta*, 285 F.3d 544, 548-49 (7th Cir. 2002). The Julkas do not allege this. Their allegation—that Rahul was forced to accept a lesser-paying job—actually works against their stigma-plus claim, because it indicates that he is still employable in his field. *See* First Am. Compl. ¶ 154. Because the Julkas do not allege Rahul's liberty of occupation has been impaired, they cannot assert a protectable interest on this basis.

Nor have the Julkas alleged that A.J. or R.J. experienced an alteration of status sufficient to invoke the Due Process Clause. As the Seventh Circuit has held, a sufficient alteration of legal status occurs when "a right or status previously recognized by state law" is altered or extinguished. *Brown v. City of Michigan City*, 462 F.3d 720, 730 (7th Cir. 2006). In *Brown*, the Seventh Circuit held that the municipality's decision to ban the plaintiff from the public parks of Michigan City did not constitute a deprivation of a right that brought the requirements of due process into play, as Indiana state law granted park officials discretion to set conditions on the public's entry to parks. *Id.* at 731. In other words, there was no state-vested right to public parks that was altered by the state's action. Likewise, the opportunity of District 53 students to participate in extracurricular activities, such as the GeoBee, is recognized by the District as a "privilege," not a "right." D.E. 72, Pl.'s Ex. I (Policy 7220) ("Extra-curricular activities . . . are a student privilege, not a right."). Courts in this district have recognized, and this Court concludes, that student participation in extracurricular activities in District 53 is not a legal right the deprivation of which invokes the requirements of constitutional due process. *Piekosz-Murphy v. Bd. of Ed. of Comm. High Sch. Dist. No. 230*, 858 F. Supp.

2d 952, 959 (N.D. Ill. 2012) (collecting cases). For these reasons, the Court concludes that the Julkas have failed to allege the "stigma-plus" needed to support a due process claim.

### B. Education interest

Next, the Julkas contend that the school district defendants' decision to exclude R.J. and A.J. from extracurricular activities by itself implicated an interest protected under the Due Process Clause. The Julkas rely upon *Camlin v. Beecher Community School District*, 339 Ill. App. 3d 1013, 791 N.E.2d 127 (2003). But the deprivation in *Camlin* is easily distinguishable from that of the present case, as it affected a very different interest: "entitlement to a public education." *Id.* at 1018-19, 791 N.E.2d at 131-32. The plaintiff in *Camlin* faced expulsion from high school for selling marijuana during a school function. *Id.* at 1016, 791 N.E.2d at 129. As in *Goss v. Lopez*, 419 U.S. 565, 573 (1975), in which the Supreme Court held that students in Ohio were entitled to the public education that the state made available, the court in *Camlin* concluded the plaintiff had a protectable interest in his public education. 339 Ill. App. 3d at 1018-19, 791 N.E.2d at 131-32.

Unlike in *Camlin*, the school district defendants have not tried to revoke R.J. or A.J.'s right to a public education. Even after the events at issue, they continued to receive an education in District 53. Rather, the District decided that R.J. and A.J. could no longer participate in academic competitions. Even though the Julkas assert "the importance of academic competitions to a given student's educational development," Pls.' Resp. to School District Defs.' Mot. to Dismiss at 7, it does not follow that the deprivation of the ability to participate in academic competitions is equivalent to a

deprivation of the student's entitlement to a public education.  *Camlin*, therefore, does not aid the Julkas' effort to show that the District deprived them of an interest protected by the Due Process Clause.  And as discussed earlier, District 53 expressly describes participation in extracurricular activities as a "privilege," not a "right."  D.E. 72, Pls.' Ex. I (Policy 7220 Extracurricular and Co-Curricular Activities).  In *Piekosz-Murphy*, the court concluded that a student did not have a protectable interest in membership in the National Honor Society when the school district's policy stated that participation was a "privilege, not a right."  *Piekosz-Murphy*, 858 F. Supp. 2d at 959.  The Julkas have not alleged that R.J. and A.J.'s interest in participating in academic competitions is protected under the Due Process Clause.

## C.    Procedural entitlements

The Julkas also contend that they possess a protectable interest in the procedural rights codified by the District's Uniform Grievance Policy (UGP) and that the District deprived them of this interest through numerous violations of the UGP.  But the school board's compliance with the UGP is not a protectable interest.  "[T]he failure to conform with the procedural requirements guaranteed by state law does not by itself constitute a violation of federal due process."  *Martin v. Shawano-Gresham Sch. Dist.*, 295 F.3d 701, 706-07 (7th Cir. 2002) (holding that plaintiffs could not state a due process claim on a school's failure to comport with its own policies while issuing a suspension).  The school district defendants' purported departures from the UGP do not affect a protectable interest.

The Court's holding is consistent with *Lewis v. Hayes*, 152 Ill. App. 3d 1020, 505 N.E.2d 408 (1987).  In *Lewis*, an Illinois appellate court concluded that a probationary

police officer possessed a property interest in his job, because a local rule stated that probationary employees could only be terminated for cause. *Id.* at 1023-24, 505 N.E.2d at 410-11. The Julkas argue *Lewis* supports the proposition that there is a protectable interest in a municipality following its own policies. The protectable property interest that *Lewis* recognized, however, was the plaintiff's "employment as a probationary officer," not the municipality's compliance with its own procedures.

### D. "Severe sanction"

The Julkas also offer the argument that, because Wennstrom wrote that they had "severe sanction," due process protections must attach. The premise—that a punishment described as a "severe sanction" must affect a protectable interest—does not enjoy any support in the case law and is not further developed by the Julkas in their submissions to the Court. The Court need not resolve the plaintiffs' "underdeveloped, conclusory, [and] unsupported" argument. *Puffer v. Allstate Ins. Co.*, 675 F.3d 709, 718 (7th Cir. 2012).

In sum, the Julkas have failed to allege a protectable property interest. For this reason, their procedural due process claim fails as a matter of law, and the Court need not address whether the process the defendants provided was adequate. The Court dismisses count 1.

### IV. Equal Protection Clause

In count 2, the Julkas contend that Massey, Roselli, the District, the Board, Wennstrom, Voliva, and Hanzlik violated the equal protection rights of R.J. and A.J. The Julkas argue count 2 as a class-of-one equal protection claim. "[T]he Equal Protection Clause may give rise to a cause of action on behalf of a class of one where

the plaintiff does not allege membership in a [protected] class or group if the plaintiff can show that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Kurtis B. v. Kopp*, 725 F.3d 681, 685 (7th Cir. 2013) (citing *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (internal punctuation omitted)).

The defendants argue that the Julkas' claim is deficient because (1) they do not allege that they were treated differently from others who are similarly situated and (2) the government possesses a rational basis for treating them differently. The Court concurs.

The Julkas allege that the Badlani children are similarly situated to A.J. and R.J. An individual is "similarly situated" to the plaintiff only if "identical or directly comparable in all material respects." *LaBella Winnetka, Inc. v. Village of Winnetka*, 628 F.3d 937, 942 (7th Cir. 2010) (dismissing a class-of-one claim for failure to adequately allege a similarly situated party). The plaintiffs allege that the Badlani children could have accessed the same materials as the Julka children—Komal shared them with Vandana over the phone—but the Julka children were punished and the Badlani children were not. As the defendants correctly respond, however, the Badlanis are not similarly situated in a way that would support an equal protection claim. Komal read a handful of questions to Vandana over the phone, and Vandana reported them to school administrators, whereas the Julkas procured the test questions themselves—a much larger set—and their children could have accessed them for a longer period. In short, there are material differences between the position of the Julka children and the Badlani children that render them not comparable for purposes of an equal protection claim.

For this same reason, the Julka cannot show that District 53 lacked a rational

basis for treating the Julka and Badlani children differently. "All it takes to defeat the

plaintiffs' claim is a *conceivable* rational basis for the difference in treatment," *Kurtis B.*,

725 F.3d at 686, and the Court can conceive of such a basis: the District could have

rationally believed the Julka students benefitted from their parents' attempt to cheat the

GeoBee but that the Badlani children did not similarly benefited. (In so stating, the

Court merely identifies a "conceivable rational basis for the difference in treatment"; it

does not reach a factual finding on what actually occurred.) Because the Julkas cannot

plausibly allege a class-of-one claim, the Court dismisses count 2.

## V.     First Amendment retaliation

In count 3, the Julkas allege that Massey, Roselli, the District and the Board

violated their First Amendment rights by retaliating against them for filing a grievance.

The defendants argue that the First Amendment does not come into play because the

Julkas' grievance did not involve a matter of public concern.

The question before the Court is whether the First Amendment protects the

Julkas from retaliation only if the grievance, the speech (or petition) at issue, involved a

matter of public concern. In this regard, the school district defendants rely upon

*Landstrom v. Illinois Department of Children and Family Services*, 892 F.2d 670 (7th

Cir. 1990). The Seventh Circuit held in that case that parents who communicated

"purely personal complaints" to a school could not allege a First Amendment retaliation

claim because the First Amendment only protects speech that touches on matters of

public concern. *Id.* at 679. The defendants argue that the Julkas' grievance, which

challenged the inclusion of disciplinary materials in the students' files, was "purely

personal" and thus does not provide the predicate for a First Amendment retaliation claim.

As other courts within the Seventh Circuit have already noted, however, *Landstrom* imported the "public concern" standard from a different area of First Amendment law. The public concern standard is part of the *Connick-Pickering* test, which applies to individuals employed by the government who bring a retaliation claim against the government. The Supreme Court held in *Connick* that the First Amendment protects the rights of public employees to speak out on issues of public concern, but not purely personal matters, as "the government has legitimate interests in regulating the speech of its employees that differ significantly from its interests in regulating the speech of people generally." *Connick v. Myers*, 461 U.S. 138, 156-57 (1983). The issue in the *Connick-Pickering* context—balancing the government's interests as an employer against the employee's interests in speaking out on matters of public concern—is not present when a parent, not employed by a school district, speaks out against the district, a public body. As several district courts have held, *Landstrom*, especially in light of subsequent Seventh Circuit cases, does not require the Court to extend the public concern requirement to speech by private citizens. *Bridges v. Gilbert*, 557 F.3d 541, 551 (7th Cir. 2009) (holding, in the context of prisoner litigation, that the public concern requirement does not extend to an individual who is not an employee). *See also Van Dyke v. Barnes*, No. 13 C 5971, 2015 WL 148977, at *5-6 (N.D. Ill. Jan. 12, 2015); *Nolan v. Village of Dolton*, No. 10 C 7357, 2011 WL 1548343, at *2-3 (N.D. Ill. Apr. 21, 2011).

In any event, even if the public concern requirement applies to the Julkas' claim,

their grievance can be plausibly read to involve a matter of public concern. As the Julkas contend, the grievance was a matter of public concern, for in it they asserted that District 53 failed to follow its own polices, a practice that threaten any other family within the district who might be disadvantaged by its disregard of its own policies. *See Kyung Hye Yano v. City Colls. of Chicago*, No. 08 C 4492, 2013 WL 3791616, at *8 (N.D. Ill. July 19, 2013) (holding that a college student's complaints about poor lab safety practices implicated the public's interest in the college's observance of its own safety policies). Moreover, the District itself seems to have treated the episode as a matter of public concern by sending to parents several communications describing the actions it had taken against the (albeit unnamed) Julkas and the importance of the episode to the District's public reputation. In sum, the Court concludes that the public concern requirement, assuming it applies, does not impose a barrier to the Julkas' retaliation claim.

To assert a claim for First Amendment retaliation, the Julkas must show that "[their] speech was constitutionally protected, that the Board took an adverse action against [them], and that its action was motivated by her constitutionally protected speech." *Mosely v. Bd. of Educ. of City of Chicago*, 434 F.3d 527, 533 (7th Cir. 2006). The Julkas have adequately alleged each of these three elements. The grievance was constitutionally protected speech or petition, as neither the "public concern" requirement nor any other reason to strip speech of First Amendment protection applies. Second, the Julkas have adequately alleged that the District and the Board took an adverse action against them by inserting negative materials to R.J.'s academic file after the grievance was filed. Adding new, potentially harmful materials to a child's academic file

is more than adequate to deter a "person of ordinary firmness" from engaging in further speech. *Id.* at 534. Third, the Julkas have adequately alleged that the conduct of the District and the Board was motivated by the grievance. As the complaint alleges, the Julkas filed their grievance in February 2016. They allege that after this, the District and the Board added materials to R.J.'s academic file that falsely described academic dishonesty that supposedly had taken place in 2015, well before anything involving the GeoBee occurred. First Am. Compl. ¶¶ 80-84. If one takes the factual allegations as true and draws reasonable inferences in favor of the Julkas, as required on a motion to dismiss for failure to state a claim, the sequence of events is sufficient to permit a reasonable inference that the untimely addition of negative materials to R.J.'s academic file was prompted by the Julkas' filing of the grievance.

Although the Julkas can establish that the District and the Board retaliated against them by adding the 2015 materials, they have not alleged any facts that would indicate that Massey or Roselli were involved in this process. There is no allegation in the complaint that Massey, who worked as an investigator, or Roselli, who worked as a mediator, helped to insert the 2015 materials into R.J.'s academic file. The Court concludes that the Julkas have failed to allege that Massey or Roselli violated their First Amendment rights through retaliation. Thus the Court need not address Massey or Roselli's qualified immunity arguments.

Separately, the school district defendants contend that the District, the Board, and Hanzlik, all of whom were named in the state-court administrative review suit that the Julkas filed, are entitled to dismissal of count 2 and the District and Board are entitled to dismissal of count 3 under the doctrine of claim preclusion, or *res judicata*.

Because the Court has already dismissed count 2 on other grounds, it considers this point only with respect to count 3. "Under Illinois law, to constitute *res judicata*, a decision must involve (1) identity of the parties or their privies in the two suits; (2) identity of causes of action in the prior and current suit; and (3) a final judgment on the merits in the prior suit." *Pirela v. Village of North Aurora*, 935 F.2d 909, 911 (7th Cir. 1991).

It is doubtful that defendants can meet the third requirement of this test, because the administrative review lawsuit was dismissed not on the merits, but on the basis of mootness. D.E. 72, Def.'s Ex. N, at 6 (Aug. 21, 2017 court transcript). *See Gassmann v. Clerk of Circuit Ct. of Cook Cty.*, 2017 IL App (1st) 151738, ¶ 33, 71 N.E.3d 783, 792. Even were that not the case, however, the dismissal of state court lawsuit would not preclude the Julkas' First Amendment retaliation claim, because the two causes of action are not identical. Illinois courts have used two different tests to determine whether two cases involve the same cause of action for purposes of claim preclusion: the "same evidence" approach and the "transactional" approach. *Id.* at 912. Neither test produces an outcome that favors the application of claim preclusion here. First, under the "same evidence" approach, the Court considers whether "the same evidence would sustain both actions." *Id.* In count 3, the Julkas allege that the District and the Board added improper materials from purported 2015 misconduct to R.J.'s student record after they filed a grievance regarding the 2016 letters and related actions by the District and the Board. But the 2015 materials that the Julkas allege were wrongly inserted into R.J.'s file were not at issue in the original state court claim, which dealt with the issuance of the 2016 letters. Likewise, under the "transactional approach," which

concerns whether each action "arise[s] out of the same group of operative facts," *id.*, the defendants fare no better, as the Julkas' First Amendment retaliation claim involves the addition to R.J.'s file of the materials about the purported 2015 misconduct, not the District and the Board's decision to include the 2016 letters in the students' files. The doctrine of claim preclusion does not therefore bar the Julkas from bringing count 3.

In sum, the Court grants Massey and Roselli's motion to dismiss count 3, but denies the motion as to the School Board and School District, the only other defendants named in count 3.

## VI. Civil conspiracy

In count 4, the Julkas contend that Robbins Schwartz, Massey, Roselli, Vandana, and the school district defendants conspired to deprive the Julkas of their constitutional rights. To sustain this claim, the Julkas must allege that two or more individuals agreed to deprive them of their constitutional rights. *Cooney v. Casady*, 735 F.3d 514, 519 (7th Cir. 2013). At the motion to dismiss stage, the plaintiff must allege facts establishing a "plausible account of a conspiracy." *Geinosky v. City of Chicago*, 675 F.3d 743, 749 (7th Cir. 2012).

In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), the Supreme Court concluded that the plaintiffs' complaint, alleging an antitrust conspiracy, was properly dismissed, as the allegedly conspiratorial conduct was equally likely to have resulted from "lawful" and "independent" goals. *Id.* at 566-67. Dismissal is appropriate here for similar reasons. The Julkas allege that "[f]rom the moment that Badlani brought false accusations of academic misconduct by the Plaintiffs to the attention of the School District and the School Board, the defendants named in this Count IV agreed, implicitly

22

or explicitly, to commit the illegal acts described herein as well as defame the Plaintiffs." First Am. Compl. ¶ 141. The other facts alleged in the Julkas' complaint, however, do not add up to a plausible allegation that the school district defendants entered into an agreement with the Badlanis in imposing sanctions on the Julkas. And the Court has separately concluded that there is no allegation supporting a plausible contention that the Robbins Schwartz attorneys had anything to do with the only constitutional deprivation still at issue, namely the placement of the letter involving the 2015 allegations into R.J.'s file allegedly in retaliation for the Julkas' filing of a grievance. Because the Julkas have not plausibly alleged the existence of a conspiracy, the Court dismisses count 4 and thus need not address the school district defendants' arguments regarding the intracorporate conspiracy doctrine or qualified immunity.

**VII.    Intentional infliction of emotional distress**

In count 5, the Julkas assert a state-law claim of intentional infliction of emotional distress (IIED) against all of the defendants other than Ravi Badlani. In Illinois, a plaintiff must allege three elements to adequately assert IIED: "(1) the conduct involved must be truly extreme and outrageous; (2) the actor must either intend that his conduct inflict severe emotional distress, or know that there is at least a high probability that his conduct will cause severe emotional distress and (3) the conduct must in fact cause severe emotional distress." *Honaker v. Smith*, 256 F.3d 477, 490 (7th Cir. 2001) (citing *McGrath v. Fahey*, 126 Ill. 2d 78, 85, 533 N.E.2d 806, 809 (1988)).

The school district defendants argue that the Julkas have failed to state an IIED claim because the conduct, as alleged, is not "truly extreme and outrageous." The complaint, which the Court must construe as true on a motion to dismiss, includes

allegations that: (1) the defendants inserted materials that falsely accused R.J., a child, of engaging in academic dishonesty in 2015; (2) these false materials were added in retaliation against the parents for using the school district's grievance procedures; (3) the school district publicized the Julkas' purported dishonesty and the steps it took against them; (4) the defendants attempted to convince the Julkas to move out of the district; and (5) the plaintiffs suffered "extreme mental distress" and "emotional and physical injuries." First Am. Compl. ¶¶ 150-55. The court concludes that the Julkas have adequately alleged an IIED claim against the school district defendants who were engaged in this conduct.

The law firm defendants argue that count 5 should be dismissed as directed against them, because the Julkas have not specifically alleged how the law firm defendants contributed to any of the IIED conduct. In response, the Julkas assert in a conclusory way that "the Law Firm Defendants were heavily involved in the entire process," Pls.' Resp. to Law Firm Defs.' Mot. to Dismiss at 10, but they fail to point to any allegations of fact suggesting that the law firm or its attorneys were involved in any conduct that was "truly extreme and outrageous." *Honaker*, 256 F.3d at 490. Because none of the Julkas' allegations in this regard involve the law firm defendants, the Court dismisses count 5 as against those defendants. For this reason, the Court need not resolve their arguments regarding litigation privilege or qualified immunity.

The Julkas have also asserted count 5 against Vandana Badlani. But the Badlanis' motion to dismiss does not address count 5; it only addresses count 4 and count 6. In the absence of a motion to dismiss, there is no basis to dismiss count 5 against Vandana.

## VI.    Spoliation

In count 6, the Julkas allege that Wennstrom, Vandana and Ravi Badlani negligently permitted spoliation of evidence by failing to retain the alleged audio recording of the conversation between Vandana and Komal.  The complaint alleges that Komal and Vandana had a telephone conversation on January 16, during which Vandana accused Komal of trying to cheat on the GeoBee, and that Ravi surreptitiously recorded Vandana's end of the conversation.  Wennstrom, at some point, prepared a transcript of the recording, which the Julkas later found.  The Julkas further allege that the transcript was used repeatedly throughout the school district's review of the GeoBee cheating accusations.  The defendants concede that the recording no longer exists.

To assert a spoliation claim, a plaintiff must allege that (1) the defendant possessed a duty to preserve evidence, (2) the defendant breached that duty, (3) an injury from the breach, and (4) damages.  *Boyd v. Travelers Ins. Co.*, 166 Ill. 2d 188, 195, 652 N.E.2d 267, 270 (1995).  Illinois law also requires that the defendant asserted "possession" or "control" over the evidence in question.  *Dardeen v. Kuehling¸* 213 Ill. 2d 329, 340, 821 N.E.2d 227, 233 (2004).  The defendants argue that the plaintiffs have failed to adequately allege a duty to preserve the recording.

The Illinois Supreme Court has established a two-step process for determining whether a duty to preserve evidence exists.  First, there must be a relationship between plaintiff and defendant, such as an "agreement, contract, statute, special circumstance, or voluntary undertaking" that gives rise to a duty to preserve the evidence.  *Id.* at 336, 821 N.E.2d at 231.  Second, a reasonable person must be able to foresee that the evidence would be material to a potential civil action.  *Id.  See also Boyd*, 166 Ill. 2d at

195, 652 N.E.2d at 271. As the Seventh Circuit has noted, "[i]t would be an understatement to say that this area of Illinois law is not governed by bright-line rules." *Schaefer v. Universal Scaffolding & Equip., LLC*, 839 F.3d 599, 609 (7th Cir. 2016)

The Julkas' briefing is not particularly helpful on this question. They do not argue why the defendants owed them a duty to preserve evidence using the legal standards set out above, and nothing in the pleadings indicates that an agreement, contract, or statue is applicable here. Based on the record before the Court, it is unclear whether a "special circumstance" or "voluntary undertaking" by any of the defendants imposed a duty to preserve the evidence. Nor is it clear whether Wennstrom ever possessed the recording, which may be needed to assert a spoliation claim against her (unless, perhaps, the claim against her is for aiding and abetting, an issue the Court need not address at this point). *Dardeen*, 213 Ill. 2d at 340, 821 N.E.2d at 233. For this reason, the Court grants the defendants' motion to dismiss count 6.

## VII.    Injunctive relief

The final claim the Julkas assert is a claim for injunctive relief against the District and the Board. In count 7, they request injunctive relief from the Court ordering the District and the Board to remove any false or negative information entered into R.J. and A.J.'s files in retaliation. The school district defendants contend that count 7, like count 3, is barred by the purported claim-preclusive effect of the prior state court judgment. For the reasons already discussed, however, the state court decision does not preclude count 3. The Court declines to dismiss count 7 for the same reason.

## Conclusion

For the foregoing reasons, the Court grants the defendants' motions to dismiss in

part and denies them in part [dkt. nos. 35, 38, 43]. Counts 1, 2, 4, and 6 are dismissed. The Court dismisses count 3 as to the law firm defendants but declines to dismiss that claim as to the other defendants named in count 3. The Court dismisses count 5 as to the law firm defendants but declines to dismiss that claim as to Vandana Badlani and the school district defendants. The Court declines to dismiss count 7. The Court also dismisses Wennstrom, Voliva, and Hanzlik insofar as they are named in their official capacities. Finally, the Court declines to dismiss the District 53 Board as a defendant. The case is set for a status hearing on April 9, 2018 at 9:30 am.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: March 26, 2018