**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| A.J. and R.J., Minor Children, by RAHUL JULKA, their Father and Next Friend, RAHUL JULKA, and KOMAL JULKA | ) ) ) ) ) | |
| Plaintiff, | ) ) | Case No. 17-cv-02849 |
| v. | ) ) | Hon. Judge Matthew Kennelly |
| Butler Illinois School District 53, et al., | ) ) | Magistrate Judge Susan Cox |
| Defendants. | ) ) | |

**PLAINITFFS' MEMORANDUM IN OPPOSITION TO SUMMARY JUDGMENT**

NOW COME the Plaintiffs, A.J. and R.J., by their Father and Next Friend, Rahul Julka, RAHUL JULKA ("Julka"), and KOMAL JULKA ("K. Julka"; collectively referred to herein as "Plaintiffs"), and as their Memorandum in Opposition to Summary Judgment, they state as follows:

**APPLICABLE LAW**

"Summary judgment is appropriate when the record shows 'that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" Fed.R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986); *Sinkler v. Midwest Prop. Mgmt., Ltd.,* 209 F.3d 678, 683 (7th Cir.2000). "In determining whether summary judgment is appropriate, the Court must view the evidence, and draw all reasonable inferences therefrom, in the light most favorable to the nonmoving party." *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986); *Kennedy v. United States,* 965 F.2d 413, 417 (7th Cir.1992). "Summary judgment is appropriate when the nonmoving party 'fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will

bear the burden of proof at trial.'" *See Celotex,* 477 U.S. at 322. "If taking the record in its entirety cannot lead a rational trier of fact to find for the nonmoving party, then there is no genuine issue for trial and summary judgment must be granted." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).

## ARGUMENT

1. **The School District Defendants violated R.J.'s constitutional rights when they retaliated against him following the filing of the grievance.**

    a. **R.J. engaged in speech through his attorney and his parents at all times relevant hereto.**

The School District Defendants attempt to improperly obtain a quick dismissal of Count III of Plaintiffs' First Amended Complaint ("Complaint") by inexplicably claiming that R.J. did not engage in speech with respect to the matters alleged in the Complaint. To begin with, the grievance at issue was filed by and on behalf of all of the Plaintiffs. Indeed, the grievance itself challenged sanctions that were issued against both R.J. and A.J. as the minor children in addition to Julka and K. Julka. The very point of the grievance was to challenge the fact that the minor children had been barred from engaging in any academic competitions for the remainder of their tenure within the District. In fact, the School District itself in its April 15, 2016 letter referred to the grievance as "the Julka Family's grievance appeal." *See* **EXHIBIT 25 at pg. 11**. This point was already raised and rejected by the Dupage County Circuit Court in the Plaintiffs' Administrative Review case. In that case, the Court, through the Honorable Judge Paul M. Fullerton, held that:

> "Moreover, the Board's argument that the Plaintiffs lack standing because the grievance complaint was filed by Subject Parents, rather than Plaintiffs, is rejected. Plaintiffs were only nine (9) and eleven (11) when the grievance complaint was filed. As minors, complaints and other documents are often filed by a parent or guardian. Additionally, the Complaint Manager's findings, affirmed by the Board in the April 15, 2016 letter, state that "the *Julka family* filed a grievance appeal" and refers to the grievance complaint as "the Julka family's grievance appeal."

*See* **EXHIBIT 25**.

Interestingly, the School District Defendants seem to imply that minor children R.J. and A.J. should have filed the grievance on their own in order for it to be considered their free speech. Certainly, as the Honorable Judge Paul M. Fullerton stated in his opinion as cited above, it is common and customary for parents or guardians to file matters on behalf of their minor children. To expect a nine (9) year old child and an eleven (11) year old child to somehow navigate the requirements and submit the content necessary for the filing of a grievance is wholly unjust and without merit.

Furthermore, R.J. repeatedly engaged in free speech with respect to the grievance and 2016 Geo Bee through his attorney, Christopher Stull, who represented only both minor children. *See* **EXHIBIT 1(a); *See* EXHIBIT 1(b), 526: 6-17**. After Plaintiffs Julka and K. Julka inquired about the process for filing a grievance, Defendant Hanzlik sent an active and current Uniform Grievance Policy 1400 ("UGP"), along with an unapproved, proposed version of the policy. *See* **EXHIBIT 4**. During this process, Defendant Hanzlik additionally represented to Plaintiffs Julka and K. Julka that a "third party not connected to the District or Board of Education" would be used to conduct the investigation. *See* **EXHIBIT 4**. The active version of the UGP was not utilized; hence, Defendant Hanzlik himself became the de facto Complaint Manager. During the grievance process, Plaintiffs Julka and K Julka, on behalf of their children and themselves, participated in a mediation at the suggestion of Attorney Libby Massey. *See* **EXHIBIT 2**. After the mediation failed, Attorney Christopher Stull was hired to represent both minor children for the grievance process and investigation. *See* **EXHIBIT 3**. Similar to how Attorney Stull represented the minor children, so, too, did Plaintiffs Julka and K. Julka. Since the grievance at issue represented claims of Plaintiff R.J., there can be no doubt that the speech at issue was that of R.J.'s.

The School District Defendants incorrectly rely on *Hodges/Friend* case to support their position that Plaintiff minor child R.J. did not engage in protected speech; however, such reliance is misplaced. The speech at issue in *Hodges/Friend* involved a parent who lodged complaints against the district. Conversely, the speech at issue in our case involves speech directly challenging sanctions issued against BOTH the minor children plaintiffs and Plaintiff. Julka and K. Julka. This Court must not be distracted by the School District Defendants' misplaced citations to alleged relevant authority.

Since there is no question as to whether Plaintiff R.J. engaged in protectable speech, the Defendants' Motion for Summary Judgment must be denied.

### b. Defendants' Motion for Summary Judgment must be denied because there remains a genuine issue of material fact as to whether the School District Defendants engaged in retaliatory acts.

Next, Defendants' Motion for Summary Judgment must be denied because there remains an important and key issue of material fact, specifically whether the School District Defendants engaged in retaliatory acts. "A plaintiff alleging retaliation under 42 U.S.C. § 1983 and the First Amendment must show that her speech was (1) constitutionally protected and (2) a substantial or motivating factor in the retaliatory action." *Spiegla v. Hull*, 371 F.3d 928, 935 (7th Cir.2004). This Court, in denying Defendants' Motion to Dismiss Count III of the Complaint, has already ruled on the issue as to whether the grievance filing was an exercise of free speech as protected under the Constitution. Furthermore, contradictory to Defendants' allegations that no retaliation occurred, there exists significant evidence to conclude that the School District Defendants engaged in retaliatory acts by, at the very least, inserting negative, altered, fabricated, and significantly late documents to Plaintiff R.J.'s student file. In fact, an e-mail from April 2016 from Defendant Superintendent Wennstrom to Jennifer Traub instructs Ms. Traub to specifically record any

incidents pertaining to Plaintiff R.J. *See* **EXHIBIT 31**. All of these acts occurred after the Plaintiffs filed their grievance.

Attorney Christopher Stull requested a copy of the student files of R.J. and A.J. on three separate occasions in 2016: first, on April 5, 2016, the School District Defendants sent Plaintiff R.J.'s student file to Attorney Stull labeled as 1-42; next, on May 10, 2016, the School District Defendants sent Plaintiff R.J.'s student file labeled as 1-163; finally, on June 29, 2016, the School District Defendants sent Plaintiff R.J.'s student file labeled as 1-123. *See* **EXHIBITS 10, 11, and 12**. Importantly, there was no deviation in information requested through the three (3) requests pertaining to academic records and the student file. A review of the documents submitted over those three (3) requests shows a large increase in negative documents in Plaintiff R.J.'s file which were not present in the School District Defendants' initial production on April 5, 2016.

The newly-inserted documents are for alleged occurrences prior to April 5, 2016 and certainly would have and should have already been contained in the student file, if inclusion of the documents was appropriate in the first place. Additionally, in the May 10, 2016 student file, there existed a different version of the February 8, 2016 letter as compared to the February 8, 2016 letter contained in the April 5, 2016 disclosure. Furthermore, the June 29, 2016 tender by the School District Defendants contained yet another different version of the February 8, 2016 letter compared to the disclosure of April 5, 2016 in addition to a different version of the April 15, 2016 letter compared to the May 10, 2016 disclosure.

Furthermore, one of the documents added to Plaintiff R.J.'s student file that was received in response to the Plaintiffs' FERPA request on May 10, 2016, a document not contained in his student file as recently as April 5, 2016, was a fabricated disciplinary form involving Plaintiff R.J. and his science class which allegedly occurred on June 3, 2015 when Plaintiff R.J. was in fourth

grade.  *See **EXHIBIT 13***.  Plaintiff R.J. never received any disciplinary action from the school, and neither Julka nor K. Julka were ever notified of any disciplinary actions handed out to Plaintiff R.J. or planned to be handed out to Plaintiff R.J.  Principal Voliva and Homeroom Teacher Adam Nicholson, under sworn deposition testimony, stated that Plaintiff R.J.'s parents met with them and Plaintiff R.J. to discuss the matter at school.  *See **EXHIBIT 14a, 38: 1-24, 39: 1-18;** See **EXHIBIT 14b, 36: 11-17***.  This testimony was categorically false as there is no evidence that a meeting was set up with Plaintiff R.J.'s parents, mainly because this meeting never occurred.  In fact, such a meeting was impossible considering Plaintiff R. Julka was at work in Merrillville, Indiana on the date of the alleged meeting as testified to by Adam Nicholson and Principal Voliva, and he could not have possibly been at any meeting, despite the fabricated disciplinary form stating he was present.  *See **EXHIBIT 15***.  The Affidavit of Jennifer Lynn Ashcroft, main medical assistant to Plaintiff Julka, corroborates the fact that Plaintiff Julka was at work on the day of the alleged in-person meeting taking place between Plaintiff Julka, K. Julka, Adam Nicholson and Principal Voliva.  *See **EXHIBIT 15b***.

     Additionally, there is no signature by the student, R.J., on the alleged disciplinary form which indicates that the document was fabricated at a later date.  In stark contrast, a disciplinary form in Plaintiff A.J.'s student file from an incident where A.J. was being bullied at school by another student was contained in all three (3) versions of Plaintiff A.J.'s student file in response to Plaintiffs' FERPA requests, was signed by A.J., and there was no evidence or allegation that a meeting with A.J. and his parents occurred.  In addition to this, contrary to Principal Voliva's sworn deposition testimony that students do not always sign the disciplinary form, Principal Voliva went out of her way to ensure that A.J. signed his disciplinary form.  *See **EXHIBIT 16***; *See*

***EXHIBIT 14a, 41: 17-24, 42: 1-17, 45: 13-24, 46: 1-14, 81: 13-24, 82: 1-22***. This same effort was not made for Plaintiff R.J.'s purported disciplinary form.

The Defendants' own statements contained in their Memorandum of Support doom their Motion for Summary Judgment. First, the Defendants specifically state that "the documents always existed but were not produced the first time Plaintiffs made a request for R.J.'s records pursuant to FERPA." *See Defendants' Memorandum in Support at pg. 6*. The Defendants continue to dig themselves into a hole by next stating that "[u]pon receipt of a second FERPA request, the school undertook a more extensive search for R.J.'s records." *Id. at pg. 7*. The Defendants fail to explain why there would be a need for variations in production when each of the FERPA requests at issue sought the same student files. Seeing how this issue forms an important crux of this case, a trier of fact must determine whether the Defendants engaged in retaliatory acts.

The Defendants' reliance on *Springer* is likewise misplaced. The facts contained in *Springer* are not the least bit similar to the facts in our case. *Springer* involved parents of a student athlete who claimed that the school retaliated against them by failing to respond to requests for meetings and otherwise avoiding communication with the parents following the parents' complaints regarding actions of the child's softball coach. Unlike *Springer*, our case involves retaliation being conducted against minor children, specifically retaliation which would jeopardize the minor children's futures. There is no shortage of evidence to show the retaliatory acts of the Defendants in this case, and the question of whether the Defendants retaliated is without doubt, even considering simply the timing and nature of the retaliation. The Defendants admit that certain documents were not produced earlier in the relevant time period but were subsequently produced.

The Defendants additionally claim that there are remedies in place which allow a family to challenge the accuracy of a student's record or the conduct of an administration. This position is without merit as it pertains to the facts of this case. The grievance as evidently conducted through Attorney Massey was biased, one-sided, not based on fact, and approached with a pre-determined outcome without any supporting facts or evidence, and the entire process engaged in by the Defendants did not follow the school's policy in place. In addition to that, the administration changes school policies at their own whim to help support the pre-determined outcome it desires. They have even gone as far as changing the process for implementing and creating new policies to suit their needs. There is no remedy for a family or child to challenge inaccurate or fabricated letters placed in their student files because ISSRA does not offer the ability to check for accuracy of contents which are placed in the students' files. Plaintiffs has attempted to exhaust the remedies available to them. *See* **EXHIBITS 24a-24e**.

Accordingly, Defendants' Motion for Summary Judgment must be denied because R.J. engaged in Constitutionally protected speech and was retaliated against as a result.

2. **Defendants' Motion for Summary Judgment must be denied because there exists a genuine issue of material fact as to whether the Defendants engaged in intentional extreme and outrageous acts.**

The School District Defendants simply argue that the conduct engaged in by them does not rise to the level of extreme and outrageous conduct. This is more so a question for the trier of facts. Setting aside that issue for the time being, under Illinois law, "'[s]evere emotional distress'" is distress so severe that no reasonable person could be expected to endure it." *Lifton v. Bd. of Educ. of City of Chicago*, 416 F.3d 571, 579 (7th Cir. 2005). In the case at bar, Plaintiffs can demonstrate the existence of outrageous conduct. Plaintiffs can demonstrate with certainty that as a result of the School District Defendants' conduct, Plaintiff Julka was forced to leave his lucrative

employment and suffered injuries to his good name and reputation. Plaintiffs can further demonstrate that the two minor children have suffered a negative impact on their reputation, are called and believed to be cheaters, are continuously harassed at school by other students, are believed to have engaged in academic misconduct despite any evidence supporting the same, and were prohibited from advancing their educational opportunities at school. Most recently, the minor children were told by another student who used to be their friend that the student could no longer be friends with him due to allegations of him being a cheater. Certainly, for a minor child, these are all acts which a trier of fact could deem to be extreme and outrageous. Plaintiff R.J. repeatedly showed signs of the impact this incident has had on him. *See **EXHIBIT 32***. In fact, the evidence demonstrates that the Defendants knew that this story would spread amongst the parent community. *See **EXHIBIT 27***. The Defendants additionally knew that their actions would lead to court proceedings and discussed demanding that Plaintiffs either pay them or be sued. *See **EXHIBIT 30***. No reasonable person in the Plaintiffs' shoes could be expected to endure the distress Plaintiffs have and continue to experience.

At all times relevant hereto, Defendants knew the importance of academic success to A.J. and R.J. in addition to their parents' interest in the same. In fact, the School is largely competitive and consists of students who excel academically. As a result, the Defendants had knowledge that engaging in the acts described above would lead to severe emotional distress being suffered by the Plaintiffs, and they intended to invoke this distress based on what the School perceived to be issues with a school family.

The Defendants attempt to curtail the issues contained in this case by claiming ignorance with respect to how families in and outside of the School had knowledge as to the occurrences at issue herein. To the contrary, the Defendants place blame on the Plaintiffs for the community

having knowledge, though they fail to explain how or why Plaintiffs would want the community finding out about the issues with the Defendants.

First, neither Plaintiff Julka nor Plaintiff K. Julka made direct statements to the media or press, unlike the multiple statements to the school community and public community made by Defendant Superintendent Wennstrom and Defendant Board President Alan Hanzlik. Plaintiff K. Julka's posting on the Daily Herald website was only in the response section for comments posted by readers, not in the body of the article itself. Her posting came after the state court ISSRA filing in which non-sealed, non-redacted material was submitted by the School District which identified R.J.'s and A.J.'s full names, social security numbers, bank account information, and health records. These filings can still be found today in the ISSRA state case court file. The ISSRA case still has the February 8, 2016 and April 15, 2016 letters, which are not redacted, and identify both minors and parents. The media has been able to gain information from the unredacted records, and they approached Defendant Superintendent Wennstrom and Defendant Board President Hanzlik, both of whom not only commented, but presented false statements. Neither Defendant Superintendent Wennstrom nor Defendant Board President Hanzlik made an attempt to rectify the false comments they made and have shown no remorse for the drastic impact their comments and actions have had on the minor children. The Defendants' broadcasting of the information through the media, board meetings, Village of Oak Brook civic letters, responses to community member emails, and submission of non-redacted information publicly available through the docket, served to identify Plaintiffs.

Defendant Superintendent Wennstrom and Defendant Board President Hanzlik specifically made false statements in the media indicating that R.J. and A.J. had used the test material to prepare for the upcoming Geo Bee exam, despite having firsthand knowledge prior to this that neither R.J.

nor A.J. had seen the test material, read the test material, heard the test material, or used the test material, as confirmed and admitted by the School and signed off on by both Defendants Wennstrom and Hanzlik. *See* **EXHIBIT 17**. Defendant Board President Hanzlik also made a false statement to the Daily Herald that K. Julka "jailbroke" the Geo Bee website to obtain the test material. This is a nonsensical statement as the term "jailbreak" does not apply to websites and the National Geo Bee confirmed that the material in question was not obtained through hacking of their website.

Even the investigation processed utilized by Defendants was improperly conducted and subjected Plaintiffs to sever emotion distress. Defendant Superintendent Wennstrom's supposed investigation into the Geo Bee incident, which led to the February 8, 2016 sanctions placed against Plaintiffs was filled with inconsistencies. It is this alleged investigation that created the issues being addressed by this Court today. None of the Plaintiffs were even notified or informed that they were being investigated. None of the Plaintiffs were aware an investigation had taken place until they received the letter of investigation findings and sanctions of February 8, 2016. Neither Plaintiff Julka nor Plaintiff A.J. ever spoke to or had any contact with school officials regarding the Geo Bee incident. The timeline created by the Defendants was modified/revised by Superintendent Wennstrom and Principal Voliva on multiple occasions, including February 12, 2016 and February 18, 2016, both of which came AFTER the investigation was completed and sanctions had been implemented against the Plaintiffs on February 8, 2016. *See* **EXHIBIT 20**.

All of the conduct exhibited by Defendants herein was extreme and outrageous, caused the Plaintiffs to suffer severe emotional distress, and the Motion for Summary Judgment must be denied. The Defendants knew the minor children were particularly susceptible to emotional distress by virtue of the fact they were nine and eleven years old, respectively, Defendants knew or should have known that Plaintiffs K. Julka and Julka would be susceptible to emotional distress by virtue of unjust punishment of their nine

and eleven year old children, Defendants held a position of absolute power over the minor children's fate, and Defendants' actions were extreme and outrageous. When analyzing the outrageousness of the behavior of a defendant, the court may take into account the defendant's abuse of a position which provides her with actual or apparent authority over the plaintiff or power to affect the plaintiff's interest, and the defendant's awareness of a plaintiff's particular susceptibility to emotional distress. *Kolegas v. Heftel Broadcasting Corp.* 154 Ill.2d 1, 21 (1992). "Behavior that might otherwise be considered merely rude, abrasive or inconsiderate, may be deemed outrageous if the defendant knows that the plaintiff is particularly susceptible to emotional distress." *Id.*

First, Defendants maintained significant control over the Plaintiffs and wielded ultimate control over the decision to impose sanctions, punishments, and permanent marks in the academic folders of the nine and eleven-year-old Plaintiffs. School authorities and the authoritative position they hold over Plaintiffs is explicitly identified by Illinois courts as giving rise to an inference of extreme and outrageous behavior:

> The more control which a defendant has over the plaintiff, the more likely that defendant's conduct will be deemed outrageous, particularly when the alleged conduct involves either a veiled or explicit threat to exercise such authority or power to plaintiff's detriment. Threats, for example, are much more likely to be a part of outrageous conduct when made by someone with the ability to carry them out then when made by someone in a comparatively weak position. The Restatement mentions **police officers, school authorities, landlords and collecting creditors as examples of the many types of individuals who may be positioned to exercise power or authority over a plaintiff**.

*McGrath v. Fahey*, 126 Ill. 2d 78, 86–87, 533 N.E.2d 806, 809–10 (1988) (emphasis added) (citing Restatement (Second) of Torts § 46, comment *e*, at 74 (1965). Additionally, "[t]he extreme and outrageous nature of the conduct may arise not so much from what is done as from abuse by the defendant of some relation or position which gives him actual or apparent power to damage the plaintiff's interests." *Milton v. Illinois Bell Tel. Co.*, 101 Ill.App.3d 75, 79 (1st Dist. 1981) (citing Prosser on Torts, 4th Ed., p. 56; accord, Restatement (Second) of Torts, s 46). Here, the conduct of the Defendants went beyond mere threats and manifested into serious sanctions imposed upon the minor children. It was only

after the filing of this litigation in addition to the filing of an administrative complaint that the School relented and lifted the sanctions.

Moreover, the analysis of extreme and outrageous behavior is of a highly subjective nature and is a decision best left for a trier of fact to decide at trial. For example, where a plaintiff was harassed at work and was pressured to falsify work reports by his foreman, the First District ruled that the defendant's behavior was sufficient to satisfy the extreme and outrageous requirement under a claim for IIED. *Milton v. Illinois Bell Tel. Co.*, 101 Ill.App.3d 75, 80 (1st Dist. 1981) (the court concluded "that a judge or jury could reasonably find that the coercion and retaliation allegedly suffered by plaintiff was so outrageous, extreme, and atrocious as to be considered intolerable in a civilized community. Therefore plaintiff's complaint meets the requirement of pleading facts which could reasonably be found to amount to extreme outrageousness." *Id*. at 81). Additionally, the Seventh Circuit upheld a jury verdict on an IIED claim in plaintiff's favor where the only evidence of the plaintiff's distress was that she was terrified in the few moments while the defendant screamed at her. *Fox v. Hayes*, 600 F.3d 819, 842-43 (7th Cir.2010). The plaintiff's husband was being questioned in the death and disappearance of the couple's child and the supervising police officer became irate at the plaintiff's continued support of her husband and screamed profanities at her. *Id*. In upholding the trial court's award, the Seventh Circuit specifically mentioned "an obviously vulnerable mother and wife" to boost an instance that might otherwise be merely an ugly insult into a valid IIED claim. *Id*. at 843. Similarly, here, the Plaintiffs include a nine and eleven year old child, along with the children's parents. The children, by virtue of their age and development, are obviously vulnerable to emotional distress as any child would be when they are subject to the investigation, accusations, and harassment that the Plaintiffs underwent herein. Additionally, the children's parents are obviously vulnerable to their small children being harassed, punished, and sanctioned for wrongs they did not commit.

The Plaintiffs' suffered severe emotional distress as a result of Defendants' conduct, as evidenced in the Plaintiffs' mental distress and physical illness that arose as a result of Defendants' actions. "Neither physical injury nor mental health treatment is absolutely necessary under Illinois law to recover

for IIED." *Bell v. Village of Streamwood* 2011 WL 4435664, *4 (Sept. 6, 2011). The requirement that severe distress must be present is to prevent fictitious claims, and Illinois courts take into account the outrageousness of a defendant's actions when evaluating the sufficiency of a plaintiff's evidence of severe emotional distress. *Id*. "In other words, a plaintiff may compensate for weak evidence of severe distress by presenting stronger evidence of the outrageousness of defendant's behavior." *Id*. Additionally, severe, long-term effects from the distress are not a prerequisite for recovery under a theory of IIED where the distress caused is sufficiently severe. *Id*. In *Fox*, the prevailing plaintiff presented no evidence which linked lingering emotional problems to an incident where a police officer screamed obscenities at her, and while he Seventh Circuit reduced the jury's $1 million award as excessive, the court upheld the award of IIED. *Fox* 600 F.3d at 845-46.

Here, the Defendants worked to impose the unjust sanctions upon the Plaintiffs, and the distress described by the Plaintiffs is entirely sufficient. For starters, two licensed physicians offered testimony concerning the physical ailments that affected the minor children following the actions Badlani and the School. If the Defendants' position is that the minor children's father, a licensed gastroenterologist and herpetologist as well as internal medicine physician, and the children's grandfather, a licensed nephrologist and internal medicine physician, are willing to lie under oath concerning the physical ailments that occurred in the minor children as a result of the actions of the Defendants, then the Court is presented with a credibility issue that a trier of fact must determine. The credibility and authenticity of the minor children's medical diagnosis is a material fact that cannot be disposed of at this stage in the proceedings.

Accordingly, the Defendants' Motion for Summary Judgment must be denied and this case must proceed to a trial.

3. **Defendants' Motion for Summary Judgment must be denied because there exists a genuine issue of material fact as to whether the improperly-added negative documents have been completely removed and whether they were properly included in the student files in the first place.**

The Defendants finally claim that the issue of injunctive relief should be considered moot because the negative documents at issue have allegedly been removed and were not properly placed in the files to begin with. This point has been addressed above with respect to retaliation. To review, aside from self-serving testimony that the documents were properly placed, the totality of the evidence demonstrates that negative documents were being added to the children's files following the filing of the grievance. For instance, the three various FERPA requests issued to the Defendants came back with additional and different documents for each response. *See* **EXHIBITS 10, 11, and 12**. How the Defendants can now claim that the documents at issue were included as a part of a separate, behavioral file is troubling, especially where the FERPA requests show virtually identical requests for records. *Id.* Since the Defendants cannot definitively demonstrate that the documents were properly present in the first place, the Motion for Summary Judgment must be denied.

Finally, the Defendants claim that injunctive relief would be burdensome to them and that the Count should be dismissed as a result. Similarly, that argument, too, is without merit. The Defendants fail to explain how removing documents from a student file would lead to great hardship to them. To the contrary, removal of these documents would be the path of least resistance and easily performed by any School employee. This Court must not be distracted by the simpleton arguments set forth by the Defendants in a half-hearted attempt to prevail on this Count for injunctive relief.

Accordingly, the Defendants' Motion for Summary Judgment must be denied.

Respectfully submitted,

**R.J., A.J., Komal Julka and Rahul Julka**

/s/ Anish Parikh_____
One of the Attorneys for Plaintiffs

## **CERTIFICATE OF SERVICE**

The undersigned, one of the attorneys of record herein, hereby certifies that on May 23, 2019, the foregoing **RESPONSE MEMORANDUM IN OPPOSITION TO SUMMARY JUDGMENT** was electronically filed with the Clerk of the U.S. District Court using the CM/ECF System, which will send notification of such filing to the following:

/s/ Anish Parikh


Daniel Formeller – dformeller@tresslerllp.com

Lindsey D. Dean – ldean@tresslerllp.com

Darcy Proctor – dlproctor@wmlaw.com