IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| A.J. and R.J., minor children, by Rahul Julka, their father and next friend, RAHUL JULKA, and KOMAL JULKA, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | Case No. 17 C 2849 |
| BUTLER ILLINOIS SCHOOL DISTRICT #53, BOARD OF EDUCATION FOR BUTLER ILLINOIS SCHOOL DISTRICT #53, HEIDI WENNSTROM, KELLY VOLIVA, ALAN HANZLIK, ROBBINS SCHWARTZ, CAROLINE ROSELLI, LIBBY N. MASSEY, VANDANA BADLANI, and RAVI BADLANI, | ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Komal and Rahul Julka are the parents of two elementary-age children, A.J. and R.J., who planned to compete in the 2016 National Geographic Bee. After the school district discovered that Komal had improperly obtained the contest questions in advance, it disciplined her and her children for academic dishonesty. Komal, Rahul, A.J., and R.J. have sued the district and a number of other defendants, alleging that the school's disciplinary procedures and resulting sanctions violated their constitutional rights and intentionally inflicted emotional distress in violation of Illinois law. The defendants have moved for summary judgment.

## Background

**A. Komal's alleged misconduct and the district's investigation**

A.J. and R.J. were students at an elementary school in Butler School District #53, which is managed by the district's board of education. Each year, the school participates in the National Geographic Bee (called the GeoBee for short), a nationwide academic competition. A.J. and R.J. hoped to participate in the 2016 GeoBee, and their mother, Komal Julka, sought out study materials to help them prepare for the competition.

In January 2016, several days before the GeoBee began, Komal called Vandana Badlani, the mother of two other students in the district, to share study materials she had obtained. After Komal read several questions over the phone, Badlani began to suspect that Komal had in fact obtained the real GeoBee questions. Komal later testified during her deposition that she had obtained the questions through her brother, although the defendants contend that Komal herself falsely registered as a homeschool teacher in order to access them. Komal further testified that she believed the questions were study materials, not the actual GeoBee questions.

The next day, Komal and Badlani spoke on the phone again. Badlani urged Komal to turn over the questions to the school's principal, Kelly Voliva. Unbeknownst to Komal, Badlani's husband Ravi recorded Badlani's end of the conversation using his cellular phone.

Badlani contacted the president of the school's parent-teacher organization about what she believed was Komal's attempt to cheat at the competition. The PTO president relayed this allegation to the district's superintendent, Heidi Wennstrom, who spoke to

2

Badlani about her conversations with Komal. Badlani sent Wennstrom the study questions that Komal had read to her over the phone, and Wennstrom determined that two of them were contest questions for the upcoming GeoBee. After speaking with Badlani, Wennstrom relayed these events to Voliva, the school's principal, and Alan Hanzlik, the school board president.

In consultation with Hanzlik, Wennstrom conducted an investigation in which she interviewed Komal, R.J., and the Badlanis and listened to the Badlanis' audio recording of the phone conversation between Komal and Vandana Badlani. Wennstrom concluded that the Julkas had engaged in academic dishonesty. As a sanction, she prohibited A.J. and R.J. from engaging in any academic competitions and barred Komal from serving as a parent volunteer for those competitions. Wennstrom did not sanction Vandana Badlani, however, because she concluded that Badlani had done nothing wrong.

In a letter to Komal and Rahul dated February 8, 2016, Wennstrom summarized her findings and explained the sanctions. Among her findings, Wennstrom wrote, "The academic dishonesty and cheating which you and your children engaged [sic] put all of the District students participating in the contest and the District at risk of being banned from current and future National Geographic Bee contests." Letter from H. Wennstrom to R. Julka (Feb. 8, 2016), Ex. 1 to K. Julka Dep., Defs.' Ex. E, dkt. no. 161-1, at 2. That same day, Wennstrom also sent a letter to all of the families in the district in which she generally described the administrative response to the Julkas' conduct without identifying them by name.

3

**B.     Grievance proceedings and litigation**

On February 16, Komal and Rahul Julka filed a grievance with the school board in which they alleged that Wennstrom handled the investigation poorly and that her findings were inaccurate. Particularly relevant to this case, the Julkas objected to Wennstrom's statement that A.J. and R.J., in addition to Komal and Rahul, had engaged in academic dishonesty.

In response to the grievance, the school district hired Libby Massey, an attorney with the law firm Robbins Schwartz that had represented the school district for over thirty years, to investigate the Julkas' allegations. Massey issued her thirty-page report on April 9, 2016. The school board ultimately accepted Massey's recommendations, which included maintaining the sanctions against Komal, A.J., and R.J. while removing from the disciplinary letters any reference to academic dishonesty on the part of the children. In consultation with another Robbins Schwartz attorney, Caroline Roselli, Hanzlik prepared a letter dated April 15, 2016 notifying the Julkas of the board's decision.

The Julkas also requested a hearing under the Illinois Student School Records Act, 105 Ill. Comp. Stat. 10/7, to challenge the decision to place the February 8 and April 15 disciplinary letters into A.J.'s and R.J.'s student files. The school district appointed hearing officer Jennifer Mueller to oversee the Julkas' challenge. At the August 2016 hearing, Mueller heard testimony and reviewed documentary evidence and found that that the current versions of the letters—from which any reference to academic dishonesty by A.J. or R.J. had been removed—were properly included in the students' files. The Julkas appealed this decision to the regional superintendent of

schools for DuPage County, who concurred with Mueller's conclusion.

The Julkas filed two lawsuits in Illinois state court. In the first suit, they sought administrative review of the district's decision in response to their grievance. Before the state court could reach a decision on the merits, however, the school district removed the letters from the students' files, and the court dismissed the case as moot. In the second suit, the Julkas challenged the decisions regarding their claims under the Student School Records Act. The Court is unable to readily determine the disposition of that case from the evidence submitted by the parties.

Finally, Komal, Rahul, A.J., and R.J. filed this lawsuit in April 2017. They have sued three groups of defendants. The first group—which the Court will refer to collectively as the school district defendants—includes the school district, the school board, principal Voliva, superintendent Wennstrom, and school board president Hanzlik. The second group comprises Vandana and Ravi Badlani. The third group includes the law firm Robbins Schwartz and its attorneys Roselli and Massey.

The defendants moved to dismiss the complaint for failure to state a claim. The Court granted the motion in part, dismissing the plaintiffs' claims under the Due Process Clause and the Equal Protection Clause of the U.S. Constitution, as well as their claims for civil conspiracy and spoliation of evidence. See *A.J. v. Butler Ill. Sch. Dist.* (*Motion to Dismiss Ruling*), No. 17 C 2849, 2018 WL 1469005, at *12 (N.D. Ill. Mar. 26, 2018). The Court also dismissed all the claims against the law firm defendants. *Id.*

As a result of that ruling, the claims that remain in the case are a claim of retaliation in violation of the First Amendment, asserted against the school district and the school board; a claim of intentional infliction of emotional distress against the school

5

district defendants and Vandana Badlani; and a claim for injunctive relief against the school district and the school board. Badlani and the school district defendants have filed separate motions for summary judgment.

### Discussion

Summary judgment is appropriate if "there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law." *Richardson v. Chi. Transit Auth.*, 926 F.3d 881, 886 (7th Cir. 2019). The Court draws all reasonable inferences in favor of the non-moving party, though the non-movant must "present specific facts establishing a material issue for trial, and any inferences must rely on more than mere speculation or conjecture." *Giles v. Godinez*, 914 F.3d 1040, 1048 (7th Cir. 2019).

**A.    First Amendment retaliation**

The plaintiffs allege that R.J was the victim of retaliation in violation of the First Amendment to the U.S. Constitution.[1] "[A]s a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions for engaging in protected speech." *Nieves v. Bartlett*, 139 S. Ct. 1715, 1722 (2019) (alteration in original) (internal quotation marks omitted). The plaintiffs contend that in retaliation for Komal and Rahul filing the grievance, the district and the school board

---

[1] The plaintiffs previously moved for leave to file a second amendment complaint through which, among other proposed changes, they sought to expand their claim of retaliation to include actions taken against A.J., Rahul, and Komal. The Court denied the motion, reasoning that this untimely amendment involved allegations that the plaintiffs had known about when they filed their previous complaint and that it risked burdening the defendants with the need to conduct additional discovery. Consistent with the allegations of the first amended complaint, therefore, the plaintiffs have not argued in opposing summary judgment that anyone other than R.J. suffered unlawful retaliation.

6

inserted certain disciplinary documents into R.J.'s student record file.[2]  Specifically, they allege that the district fabricated or altered records, including a disciplinary report regarding an event in 2015, that the plaintiffs contend was placed in R.J.'s file in April or early May 2016.

### 1. Whether R.J. engaged in protected speech

The school district defendants first argue that they are entitled to summary judgment on the retaliation claim because R.J. did not engage in protected speech. Instead, they observe, it is undisputed that Komal and Rahul filed the grievance that prompted the alleged retaliation.  The defendants rely on *Hodges v. Valley View Community Unit School District 365U*, No. 11 C 8418, 2013 WL 5289059 (N.D. Ill. Sept. 18, 2013), in which the court granted summary judgment on a First Amendment retaliation claim in part because it was undisputed that "the speech underlying [the claim] was that of the plaintiff's mother, not the plaintiff."  *Id.* at *2.  They also cite *Zitzka v. Village of Westmont*, 743 F. Supp. 2d 887 (N.D. Ill. Sept. 28, 2010), in which the court granted summary judgment on claims of retaliation against minor children, noting that the plaintiffs had not shown that "children engage in First Amendment activity merely by virtue of their parents' activity."  *Id.* at 916.

Although in general courts require that plaintiffs alleging retaliation under the First Amendment must have engaged in protected speech, *see, e.g.*, *Hartman v. Moore*, 547

---

[2] To the extent the plaintiffs argue that other speech, including statements by the attorney for A.J. and R.J., constitutes the protected speech underlying the retaliation claim, the plaintiffs failed to allege those factual bases for the claim and are thus precluded from relying on them to oppose summary judgment.  *See Chessie Logistics Co. v. Krinos Holdings, Inc.*, 867 F.3d 852, 859–60 (7th Cir. 2017) (noting that plaintiffs may not "attempt to alter the factual basis of a claim at summary judgment").

7

U.S. 250, 256 (2006), the Court is not persuaded that the defendants are entitled to summary judgment on this basis given the record evidence in this case. Rahul and Komal's grievance partly concerned disciplinary sanctions imposed on A.J. and R.J., to which the Julkas objected as "unfair and unjust." Grievance, Ex. B. to Massey Report, Defs.' Ex. J, dkt. no. 162–1, at 3. And in her report summarizing her investigation, Massey characterized the grievance as having been filed by the "Julka family." Massey Report, Defs.' Ex. J., dkt. no. 162–1, at 1. Thus insofar as the grievance was sent by R.J.'s parents on his behalf, it would be incongruous to hold that R.J.—then an eleven-year-old elementary school student—was not entitled to First Amendment protections because he did not personally write or deliver the grievance. A reasonable jury could find that R.J. was dependent upon his parents to file the grievance in this case; indeed, as the defendants acknowledge, Illinois law prevents R.J. from even obtaining a copy of his student records without a parent's permission. *See* 105 Ill. Comp. Stat. 10/6. Adopting the defendants' proposed rule would effectively authorize retaliation against individuals who did not personally make the protected speech even where it would be unreasonable, as a practical matter, to expect the plaintiff to speak on his or her own behalf.

The Supreme Court has expressed concerns about placing undue limits on First Amendment claims in assessing whether parties have standing to challenge overly broad statutes that criminalize speech. *See Los Angeles Police Dep't v. United Reporting Publ'g Corp.*, 528 U.S. 32, 38 (1999) (explaining that less stringent standing requirements apply to First Amendment plaintiffs alleging overbreadth because "persons whose expression is constitutionally protected may well refrain from exercising

8

their right for fear of criminal sanctions provided by a statute susceptible of application to protected expression"). As the Court explained in *Dombrowski v. Pfister*, 380 U.S. 479 (1965), overbroad statutes "lend themselves too readily to denial" of First Amendment rights such that "free expression—of transcendent value to all society, and not merely to those exercising their rights—might be the loser." *Id.* at 486. Although neither overbreadth nor standing are at issue in this case, the principles animating this standing doctrine advise caution in foreclosing retaliation claims by minor children whose parents speak on their behalf because the threat of such retaliation "may inhibit the full exercise of First Amendment freedoms." *Id.*

*Hodges* and *Zitzka*, both district court cases, do not require a different result. In *Hodges*, neither the district court's ruling nor the Seventh Circuit opinion upholding summary judgment describe the factual circumstances of the plaintiff's mother's speech, which makes it difficult to determine whether the speech is meaningfully comparable to the grievance filed in case. Notably, in reviewing the district court's ruling, the Seventh Circuit did not reach the issue of whether the student engaged in protected speech. *See Friend v. Valley View Comm. Unit Sch. Dist. 365U*, 789 F.3d 707, 712–13 (7th Cir. 2015). For the reasons the Court has articulated, a broad interpretation of *Hodges* risks inappropriately limiting the scope of First Amendment retaliation claims. The district court's decision in *Hodges* thus has relatively limited persuasive value.

The holding in *Zitzka* is also distinguishable. In that case, the minor children's sole involvement in the protected speech was that they rode along in their parents' car, which bore a sign criticizing the local police department. *Zitzka*, 743 F. Supp. 2d at 916. The minor children's connection to the speech is thus far more tenuous than R.J.'s

9

connection to the grievance in this case, which his parents filed in part to challenge the sanctions against him and protect his interests. Even assuming the court correctly determined that as a general matter children do not "engage in First Amendment activity merely by virtue of their parents' activity," *id.*, a jury could reasonably conclude that R.J. engaged in protected speech in the particular circumstances of this case.

### 2. Retaliatory motive

The defendants also contend that they are entitled to summary judgment on the retaliation claim because there is no evidence from which a reasonable jury could find that they acted with a retaliatory motive. The plaintiffs primarily rely on evidence that the allegedly falsified 2015 disciplinary report was not part of R.J.'s student file when it was first turned over on April 5, 2016 but that it showed up in a subsequent copy of the file produced on May 10.[3] The plaintiffs contend that this proves that the document was added in the intervening month, during which time the parties were litigating the defendants' grievance procedures in state court. The defendants respond that they simply failed to produce the full set of R.J.'s records the first time, and they argue that the plaintiffs' proposed inference depends on mere speculation that is insufficient to withstand summary judgment.

At this stage, the Court must draw all reasonable inferences in favor of the plaintiffs. One such reasonable inference—though not the only one a jury might reasonably draw from the evidence—is that the 2015 disciplinary note was omitted from

---

[3] In arguing that the disciplinary report was "fabricated," the plaintiffs contend only that the document was created after the fact for a retaliatory purpose, not that the underlying events described in the disciplinary report did not occur. *See* Pls.' Resp. to L.R. 56.1 Stmt., dkt. no. 183, ¶ 70.

10

the first copy of the student file because it was added only after April 5.  If the jury were to draw that inference, it could reasonably conclude that the defendants' explanation for failing to include the note the first time they turned over R.J.'s file was dishonest and pretextual.  Pretextual explanations in turn support a reasonable inference that the defendants are covering up a retaliatory motive.  *See Kidwell v. Eisenhauer*, 679 F.3d 957, 969 (7th Cir. 2012); *cf. Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 147 (2000) ("In appropriate circumstances, the trier of fact can reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose.").  The plaintiffs also point to alleged anomalies in the disciplinary report, including that it was missing R.J.'s signature, which provides further circumstantial evidence to support a reasonable inference it was manufactured for a retaliatory purpose.

The defendants next point to regulations governing student files that they contend show that their conduct was not retaliatory.  First, they note that under the state laws that govern which documents must or may form a student's record, the inclusion of a disciplinary report is undoubtedly permissible.  But the defendants cite no authority suggesting that following these procedures insulates them from liability for retaliation.  Indeed, even if a jury were to find that the defendants were motivated in part by a desire to comply with the law, "a retaliation claim only requires evidence that the plaintiff's protected activity was at least a motivating factor for the retaliatory action."  *Thomas v. Anderson*, 912 F.3d 971, 976 (7th Cir. 2018) (internal quotation marks omitted).

Second, the defendants contend that their conduct cannot be retaliatory because state law prevented them from disclosing the records without their parents'

11

authorization. But for the purposes of this claim, the allegedly adverse government action "need not be great in order to be actionable," and need not even constitute a "tangible detriment." *Mosely v. Bd. of Educ. of City of Chi.*, 434 F.3d 527, 534 (7th Cir. 2006). A jury could reasonably find that the inclusion of a falsified disciplinary report in retaliation for the grievance is the kind of "false accusation[]" that "create[s] the potential for chilling" protected speech. *DeGuiseppe v. Village of Bellwood*, 68 F.3d 187, 192 (7th Cir. 1995).

For these reasons, the Court concludes that the defendants have not shown that they are entitled to summary judgment on the plaintiffs' claim of First Amendment retaliation.

**B.     Intentional infliction of emotional distress**

The plaintiffs allege that both the school district defendants and Vandana Badlani engaged in intentional infliction of emotional distress (IIED) under Illinois law. "To prevail on a claim of intentional infliction of emotional distress, the plaintiff must prove the following three elements: (1) that the defendant's conduct was truly extreme and outrageous, (2) that the defendant either intended that his conduct would cause severe emotional distress or knew that there was a high probability that his conduct would do so, and (3) that the defendant's conduct did in fact cause severe emotional distress." *Taliani v. Resurreccion*, 2018 IL App (3d) 160327, ¶ 26, 115 N.E.3d 1245.

   **1.     School district defendants**

The plaintiffs allege that the school district defendants engaged in various forms of extreme and outrageous conduct. Primarily, however, they emphasize two aspects of the defendants' behavior: the allegedly retaliatory acts, which the plaintiffs refer to as

"unjust sanctions," and their statements to the media. In denying the motion to dismiss the IIED claim, the Court held that the plaintiffs had adequately alleged that the defendants engaged in the several forms of extreme and outrageous behavior: inserting materials into R.J.'s student file that accused him of engaging in academic dishonesty in 2015, doing so in retaliation for the parents' grievance, and publicizing the Julkas' purported dishonesty and the steps the school district took against them. *See Motion to Dismiss Ruling*, 2018 WL 1469005, at *10.

As the Court previously discussed, a jury could reasonably conclude that the school district and the school board engaged in retaliatory acts against R.J., who at the time was eleven years old. Conduct is more likely to extreme and outrageous when the defendant occupies a position of authority; for that reason, school authorities are among the "types of individuals who in exercising their authorities can become liable for extreme abuses of their positions." *Doe v. Calumet City*, 161 Ill. 2d 374, 393, 641 N.E.2d 498, 507 (1994), *overruled on other grounds by In re Chi. Flood Litig.*, 176 Ill. 2d 179, 680 N.E.2d 265 (1997). And because R.J. was a child, a jury could appropriately infer that the defendants knew that his youth made him more susceptible to emotional distress. *See Kolegas v. Heftel Broad. Corp.*, 154 Ill. 2d 1, 21, 607 N.E.2d 201, 211 (1992) ("Behavior that might otherwise be considered merely rude, abrasive or inconsiderate may be deemed outrageous if the defendant knows that the plaintiff is particularly susceptible to emotional distress."). The jury could thus reasonably conclude that the school district defendants' conduct was sufficiently extreme and outrageous to support the plaintiffs' IIED claim with respect to R.J.

The evidence that the defendants engaged in intentional infliction of emotional

distress with respect to the other three plaintiffs is more tenuous but nonetheless sufficient to withstand summary judgment. The plaintiffs have pointed to evidence from which a jury could reasonably find that the school district and the school board engaged in a pattern of conduct in which they unfairly sanctioned the Julka family, publicized their alleged wrongdoing and the resulting sanctions to the community, and took retaliatory actions against R.J. Although each one of these actions considered in isolation might be insufficient to establish extreme and outrageous conduct toward Komal, Rahul, and A.J., a jury evaluating the allegations and the evidence as a whole could reasonably conclude that the defendants' entire course of conduct was tortious. *See Feltmeier v. Feltmeier*, 207 Ill. 2d 263, 274, 798 N.E.2d 75, 83 (2003) ("A pattern, course, and accumulation of acts can make an individual's conduct sufficiently extreme to be actionable, whereas one instance of such behavior might not be." (internal quotation marks omitted)).

The defendants also argue—almost in passing—that there is insufficient evidence to permit a reasonable jury to find that their actions proximately caused any emotional distress. But if a jury were to conclude that the defendants engaged in the extreme and outrageous conduct previously described, the jury could reasonably infer both that emotional distress was a "likely result" of the defendants' conduct and that the retaliation was a "substantial factor" in the emotional distress that the plaintiffs allegedly suffered. *See Turcios v. DeBruler Co.*, 2015 IL 117962, ¶¶ 23, 24, 32 N.E.3d 1117, 1124 (explaining that under Illinois law proximate cause encompasses both "legal cause" and "cause in fact"); *Hooper v. County of Cook*, 366 Ill. App. 3d 1, 11, 851 N.E.2d 663, 672 (2006) (noting that proximate cause is a normally question of fact for

14

the jury that "can only be a question of law when the facts are not only undisputed but such that there can be no difference in the judgment of reasonable [people] as to the inferences to be drawn from them").

2. **Badlani**

Vandana Badlani has also moved for summary judgment on the claim of IIED, the plaintiffs' sole remaining claim against her. The plaintiffs allege that Badlani engaged in extreme and outrageous conduct by illicitly recording her phone call with Komal, reporting to the school administrators that she suspected that Komal had wrongfully obtained real GeoBee questions, and playing the recording for superintendent Wennstrom.

This conduct, even considered as a whole, is not sufficiently extreme to permit a reasonable jury to find in the plaintiffs' favor on their IIED claim against Badlani. Under Illinois law, "liability [for IIED] does not extend to mere insults, indignities, threats, annoyances, petty oppressions or trivialities." *Pub. Fin. Corp. v. Davis*, 66 Ill. 2d 85, 89–90, 360 N.E.2d 765, 767 (1976). Even if Badlani acted unlawfully by recording Komal without her consent, this behavior is not "so extreme as to go beyond all possible bounds of decency and to be regarded as intolerable in a civilized society." *Taliani*, 2018 IL App (3d) 160327, ¶ 26, 115 N.E.3d at 1254; *see also Harriston v. Chi. Tribune Co.*, 992 F.2d 697, 703 (7th Cir. 1993) (holding that a plaintiff who alleged that her employer engaged in a pattern of mistreatment that included electronically eavesdropping on the plaintiff's phone calls did not state a claim for IIED). Unlike the school district defendants, Badlani did not occupy a position of authority over any of the plaintiffs, and her involvement in the disciplinary dispute was relatively limited in time

15

and scope. Because no reasonable jury could find that she engaged in extreme and outrageous conduct, Badlani is entitled to summary judgment.

**C.     Injunctive relief**

Finally, the school district defendants contend that they are entitled to summary judgment on count 7 of the complaint, in which the plaintiffs request injunctive relief against the school board and the school district. Specifically, the plaintiffs seek an injunction ordering the school board and the school district to remove any "negative documents" that were improperly placed in R.J.'s and A.J.'s student files. The defendants point to evidence, including the deposition testimony from Komal Julka, that the offending documents have already been removed. The plaintiffs do not offer a meaningful response to this evidence, instead insisting that "the Defendants cannot definitively demonstrate that the documents were properly present in the first place"—a non-sequitur. Pls.' Resp. Br., dkt. no. 182, at 15. In any case, the theoretical possibility that the disciplinary documents might still be in the students' files, without any supporting evidence, is insufficient to demonstrate the existence of a genuine issue of fact, and the school district defendants are therefore entitled to summary judgment on count 7. *See Matsushita Elec. Indus. Co., Ltd v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (noting that the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts").

## Conclusion

For the foregoing reasons, the Court grants the school district defendants' motion for summary judgment [dkt. no. 157] with respect to count 7 of the first amended complaint but otherwise denies the motion. The Court grants defendant Vandana

Badlani's motion for summary judgment [dkt. no. 169]. The case is set for a status hearing on September 3, 2019 at 9:30 a.m. for the purpose of setting the date for the final pretrial conference and a deadline for filing the final pretrial order, and to discuss the possibility of settlement. The Court also anticipates discussing the possibility of moving up the trial from the currently set date of December 16, 2019.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: August 26, 2019