IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| A.J. and R.J., Minor Children, by RAHUL JULKA, their Father and Next Friend, RAHUL JULKA, and KOMAL JULKA | ) ) ) ) ) | |
| Plaintiff, | ) ) | Case No. 17-cv-02849 |
| v. | ) ) | Hon. Judge Matthew Kennelly |
| Butler Illinois School District 53, et al., | ) ) | Magistrate Judge Susan Cox |
| Defendants. | ) ) | |

## DEFENDANTS' HANZLIK AND BOARD OF EDUCATION'S RENEWED MOTION AND MEMORANDUM IN SUPPORT OF JUDGMENT AS A MATTER OF LAW

NOW COME the Defendants, the Board of Education of Butler School District 53 ("the Board") and Alan Hanzlik, by and through their attorneys, Wiedner & McAuliffe, Ltd., and for their Renewed Motion for Judgment as a Matter of Law pursuant to Rule 50(b) of the Federal Rules of Civil Procedure, state the following:

## INTRODUCTION

This Court should enter judgment for the Board and Alan Hanzlik ("the Moving Defendants") as a matter of law on Rahul Julka's intentional infliction of emotional distress claim ("IIED") because the evidence presented was wholly insufficient to establish IIED. First, Dr. Julka provided only vague, general testimony as to the distress he allegedly experienced, and his testimony established that any distress he experienced was not severe. Further, Dr. Julka provided no evidence that the Mr. Hanzlik's conduct individually, and in the case of the Board as a whole, rose to the level of extreme and outrageous conduct necessary to prove IIED. Dr. Julka likewise failed to elicit any testimony that Mr. Hanzlik or the Board intended or knew there was

1

a high probability that their conduct would cause severe emotional distress. As such, the Moving Defendants are entitled to judgment as a matter of law pursuant to Rule 50(b) on Dr. Julka's IIED claim.

## PROCEDURAL POSTURE

On December 19, 2019, following the close of Plaintiffs' case-in-chief, all Defendants (the Board, Alan Hanzlik, Kelly Voliva and Heidi Wennstrom) moved for judgment as a matter of law pursuant to Rule 50 of the Federal Rules of Civil Procedure. (Doc. 262). This Court took Defendants' motion under advisement and allowed the case to proceed to verdict.

On December 20, 2019, the jury returned a verdict in favor of the Board on Plaintiff R.J.'s First Amendment retaliation claim, in favor of all Defendants on R.J.'s intentional infliction of emotional distress ("IIED") claim, in favor of all Defendants on Plaintiff A.J.'s IIED claim, in favor of all Defendants on Plaintiff Komal Julka's IIED claim, and in favor of Defendants Kelly Voliva and Heidi Wennstrom on Plaintiff Rahul Julka's IIED claim. However, the jury returned a verdict against the Board and Alan Hanzlik on Plaintiff Rahul Julka's IIED claim. No compensatory damages were awarded.

## LEGAL STANDARD

A judgment may be entered as a matter of law if a party has been fully heard on an issue during a jury trial and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue. Fed. R. Civ. P. 50(a)-(b). The evidence must be viewed in the light most favorable to the non-moving party and the Court must determine whether the evidence is sufficient to sustain a verdict in favor of the non-moving party. *Hammond Group, Ltd. v. Spalding & Evenflo Companies, Inc.*, 69 F.3d 845, 848 (7th Cir. 1995). A motion for judgment as a matter of law may be made at any time before the case is submitted to the jury. Fed. R. Civ.

P. 50(a)(2). If a motion for judgment as a matter of law is made under Rule 50(a) and the court does not grant the motion, the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion. Fed. R. Civ. P. 50(b). Following the entry of judgment, the movant may file a renewed motion for judgment as a matter of law. *Id.*

## ARGUMENT

### I. Rahul Julka failed to establish he suffered severe emotional distress, mandating that judgment be entered for Hanzlik and the Board on his IIED claim.

This Court should grant the Moving Defendants' motion because the testimony of Dr. Julka failed, as a matter of law, to establish that he suffered severe emotional distress. In Illinois, emotional distress alone is not sufficient to give rise to a cause of action. *Wordlow v. Chi. Bd. of Educ.*, No. 16-cv-8040, 2018 U.S. Dist. LEXIS 199701, *38 (N.D. Ill. Nov. 26, 2018). It must be **severe**. *Id.* (emphasis added). The emotional distress suffered by the plaintiff must be such that no reasonable person could be expected to endure it. *Rekosh v. Parks*, 316 Ill. App. 3d 58, 67 (2d Dist. 2000). Emotional distress includes all highly unpleasant mental reactions, such as fright, horror, grief, shame, humiliation, embarrassment, anger, chagrin, disappointment, worry, and nausea. *Bianchi v. McQueen*, 2016 IL App (2d) 150646, ¶86. It is "only where it is extreme," however, "that the liability arises." *Wordlow*, 2018 U.S. Dist. LEXIS 199701 at *38 (quoting Restatement (2d) of Torts Sec. 46, cmt. i). The intensity and duration of the distress are factors to be considered in determining its severity. *Feltmeier v. Feltmeier*, 207 Ill. 2d 263, 277 (2003). While not required, courts also consider whether the plaintiff sought medical attention. *Knysak v. Shelter Life Ins. Co.*, 273 Ill. App. 3d 360, 371 (5th Dist. 1995) (affirming reversal of jury's verdict on IIED claim in part because plaintiff did not seek medical treatment or medication for his alleged distress, which court found was not severe as a matter of law).

Dr. Julka did not set forth a single piece of evidence to prove that he suffered *severe* emotional distress. Rather, he testified that two things caused him to become humiliated and hurt: a Tribute newspaper article, which he claims caused his coworkers to become aware of the incident at issue, and seeing his children and wife allegedly upset. (Trial Transcript of Proceedings,[1] Vol. 3-A at 5:24-7:6; 9:6-11:13).[2] Dr. Julka testified that he felt humiliated, helpless, hurt, disappointed, angry, stressed, and frustrated. (Trial Tr., Vol. 3-A at 6:25-7:3; 9:3-11:13). Illinois law is clear that these general feelings, without more, do not rise to the level of *severe* emotional distress. *Cheatham v. City of Chi.*, 16 C 3015, 2018 U.S. Dist. LEXIS 76440, *19 (N.D. Ill. May 7, 2018) (stating that feeling appalled, annoyed, aggravated, disgusted, offended, upset, embarrassed, uncomfortable, belittled and self-conscious is not enough to establish severe emotional distress); *Woods v. Clay*, 01 C 6618, 2005 U.S. Dist. LEXIS 343, **51-52 (N.D. Ill. Jan. 10, 2005) (stating the plaintiff's sleeplessness, shame, humiliation and depression, without more, does not constitute severe emotional distress); *Sanglap v. LaSalle Bank, FSB*, 00 CV 1663, 2002 U.S. Dist. LEXIS 335, *8 (N.D. Ill. Jan. 8, 2002) ("[e]motional distress such as fright, horror, grief, shame, humiliation, and worry alone do not constitute severe emotional distress."); *Bianchi*, 2016 IL App (2d) 150646 at ¶86.

Dr. Julka did not testify that any of his alleged feelings impacted his daily life or abilities. (*See generally* Trial Tr., Vol. 2-B at 118:6 through Vol. 3-A at 38:8). He likewise did not provide any testimony as to the intensity of his emotional feelings or their duration. *See Feltmeier*, 207 Ill. 2d at 277; (*See generally* Trial Tr., Vol. 2-B at 118:6 through Vol. 3-A at 38:8). He did not testify that he sought medical or mental health treatment for his emotional distress, or that he

---

[1] Because the final trial transcript will not be complete until after the filing deadline for this motion, Defendants cite to the realtime, unedited version of the transcript throughout their brief. Defendants reserve their right to supplement their brief to include citations to the final transcript once they receive it, if the Court requires.

[2] Although Dr. Julka switched jobs to be closer to home, he never testified that this caused him any distress. (Trial Tr., Vol. 3-A at 5:1-7:6)

took medication for his emotional distress. (*See generally* Trial Tr., Vol. 2-B at 118:6 through Vol. 3-A at 38:8). He did not provide any testimony that Mr. Hanzlik or the Board did anything to directly cause him emotional distress; in fact, his testimony is devoid of any connection between Mr. Hanzlik's and the Board's alleged conduct and his feelings. (*See generally* Trial Tr., Vol. 2-B at 118:6 through Vol. 3-A at 38:8). Notably, Dr. Julka did not even mention Mr. Hanzlik at trial. (*See generally* Trial Tr., Vol. 2-B at 118:6 through Vol. 3-A at 38:8). Moreover, there is no evidence that Hanzlik or the Board caused the newspaper article to be published. Rather, Dr. Julka admitted that this article was published only after his state court complaint was filed, making the issue and his family name public. (Trial Tr., Vol. 3-A at 5:24-6:5, 20:15-22:18). The evidence does not suggest that the newspaper article would not have been published if Mr. Hanzlik declined to comment. (*See generally* Trial Tr., Vol. 2-B at 118:6 through Vol. 3-A at 38:8).

Regarding his hurt feelings at observing his wife and children allegedly undergo behavior changes, these vague, tangential feelings fall well-short of the type of severe distress that Illinois law requires to support a claim for IIED. Dr. Julka never testified that his own behavior changed or that he experienced anything other than "hurt" and "upset," and failed to provide any detail about how his observations of his wife and children supposedly caused him severe distress. Under Illinois law, a plaintiff's emotional distress must be so severe that no reasonable person could be expected to endure it. *Rekosh*, 316 Ill. App. 3d at 67. Even where a plaintiff suffers nightmares, reoccurring fear, and depression, these feelings are insufficient to establish severe emotional distress to support an IIED claim. *Knysak*, 273 Ill. App. 3d at 371 (affirming trial court's reversal of jury's judgment against defendant on IIED claim where plaintiff testified he was "very depressed," especially because of wife's alleged medical condition, because testimony

was insufficient to establish severe emotional distress); *Khan v. American Airlines*, 266 Ill. App. 3d 726, 732-33 (1st Dist. 1994). In sum, Dr. Julka failed to set forth evidence that any distress he suffered was so severe that no reasonable person could be expected to endure it, and judgment should be entered for Mr. Hanzlik and the Board on his claim. *Adams v. Sussman & Hertzberg, Ltd.*, 292 Ill. App. 3d 30, 38-40 (1st Dist. 1997) (affirming judgment as a matter of law on IIED claim where plaintiff failed to prove severe emotional distress where he was wrongfully charged with a crime and testified he felt shame, worry over his job, and humiliation), *distinguished on other grounds by Bowlds v. Viciego*, 2015 IL App (2d) 140065-U, 2015 Ill. App. Unpub. LEXIS 563. Significantly, the Julkas' testimony was not as compelling as the plaintiffs' testimony in *Knysak* or *Adams*, where the Courts still found the distress not sufficiently severe. *Adams*, 292 Ill. App. 3d at 38-40; *Knysak*, 273 Ill. App. 3d at 371.

**II.    The Moving Defendants are entitled to judgment as a matter of law on Plaintiff Rahul Julka's IIED claim because the evidence is insufficient to establish that their conduct was extreme and outrageous.**

Under Illinois law, to succeed on a claim for intentional infliction of emotional distress, a plaintiff must prove that the defendant's conduct was extreme and outrageous. *Sabol v. Walter Payton Coll. Prep. H.S.*, 804 F. Supp. 2d 747, 758 (N.D. Ill. 2011). Extreme and outrageous behavior must be conduct "that goes beyond all possible bounds of decency." *Hearon v. City of Chicago*, 157 Ill. App. 3d 633, 637 (1st Dist. 1987). Liability does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. *Id*; Restatement (Second) of Torts § 46 cmt. d (1965). When a defendant in an action for emotional distress is accused of improperly using a position of power or authority, courts view this allegation in conjunction with another significant consideration: whether the defendant reasonably believed that his objective

was legitimate. *McGrath v. Fahey*, 126 Ill. 2d 78, 88 (1988); *e.g. Gibson v. Chemical Card Services, Corp.*, 157 Ill. App. 3d 211, 219 (1st Dist. 1987).

### A. Alan Hanzlik is entitled to judgment as a matter of law because the only evidence presented at trial established that he was pursuing the Board's legitimate objectives at all times.

During trial, Plaintiff Dr. Rahul Julka did not set forth sufficient evidence that Mr. Hanzlik engaged any extreme or outrageous conduct. The testimony elicited at trial regarding Mr. Hanzlik was limited to his role in responding to the grievance filed by the Julkas. Essentially, Plaintiffs attempted to prove that Mr. Hanzlik engaged in extreme and outrageous conduct by unfairly applying the District's uniform grievance procedure, voicing his concern about the reputation of the School District, threatening the Julkas to withdraw their grievance and FOIA requests, and publicizing the Geo Bee incident. None of this alleged conduct exceeds all bounds of human decency, particularly where Mr. Hanzlik testified that he was performing his required functions as president of the School Board. *Knysak*, 273 Ill. App. 3d at 370 ("A person will not be liable where he has done nothing more than demand legal rights in a permissible way, although aware that such demand is likely to cause emotional distress."). Judgment should be entered in favor of Mr. Hanzlik.

First, Mr. Hanzlik did not issue the sanctions, nor was he involved in investigating the Geo Bee incident at any level. (Trial. Tr., Vol. 4-A at 96:24-97:12; Vol. 4-B at 84:14-16). Further, the unrebutted evidence showed that once a grievance was filed by the Julkas, Mr. Hanzlik went above and beyond the requirements of the District's Uniform Grievance Procedure ("UGP"). Mr. Hanzlik testified that the Julkas' grievance was the first grievance he had dealt with while Board president, and that, initially, he did not know what the process was. (Trial Tr., Vol. 4-A at 101:3-11, 104:14-17). Mr. Hanzlik testified that normally, grievances go to the

school superintendent, not the Board. (Trial Tr., Vol. 4-A at 101:6-9). However, because Superintendent Wennstrom's actions were the subject of the grievance in this case, the Julkas filed it with Mr. Hanzlik and the Board. (Trial Tr., Vol. 4-A at 101:9-11, 22-25; Vol. 4-B at 17:11-18). Importantly, after Mr. Hanzlik received the grievance, he immediately requested the District's grievance policy from Superintendent Wennstrom so that he could become familiar with and understand the process. (Trial Tr., Vol. 4-A at 101:15-17, 102:1-17).

The UGP that was in place at the time the Julkas filed their grievance named two District employees as complaint managers, one of whom was retired and no longer available, and the other was a subordinate of Superintendent Wennstrom's. (*See* Exhibit A, Plaintiffs' Trial Exhibit 57; Trial Tr., Vol. 4-B at 82:4-83:2). Because Mr. Hanzlik felt it would be inappropriate to appoint Superintendent Wennstrom's subordinate as the complaint manager, he appointed himself. (Trial Tr., Vol. 4-B at 15:20-15; 82:22-83:2). He then took it upon himself to ask the District's law firm to recommend an attorney who could perform an impartial investigation of the matter, despite knowing that virtually anyone could serve this role. (Trial Tr., Vol. 4-B at 83:3-15, 84:10-13). Ultimately, attorney Libby Massey was retained to perform the investigation because she was well-versed in both Illinois law and the Illinois School Code, knew nothing about the School, had never worked for the School, and came from a reputable, high quality law firm. (Trial Tr., Vol. 4-B at 84:2-13). Thus, the evidence presented at trial showed that Mr. Hanzlik went beyond what was required in the UGP. (Ex. A, Pl. Ex. 57; Trial Tr., Vol. 4-A at 101:3-25, 102:1-17, 104:14-17; Vol. 4-B at 15:20-15, 17:11-18, 82:22-83:2, 83:3-15, 84:10-13). As a matter of law, this conduct is not extreme and outrageous. To the contrary, Mr. Hanzlik testified that he did what he thought best to protect all parties' interests, and it is axiomatic that this does not exceed all bounds of human decency.

Second, Plaintiff counsel's questioning of Mr. Hanzlik widely focused on attempting to establish that Mr. Hanzlik's only concern in this matter was the reputation of the District and the burden imposed on the taxpayers. Plaintiffs introduced correspondence from Mr. Hanzlik to Dr. Julka, in which Mr. Hanzlik explained to the Julkas that the cheating allegations could damage the positive reputation of the School District, that the School District had already spent close to $100,000 on the matter, and that the Board may seek to recover costs from them. (*See* Exhibit B, Plaintiffs' Trial Exhibit 139 at P10066; Trial Tr., Vol. 4-B at 29:18-30:20, 31:4-35:7). Additionally, Mr. Hanzlik advised the Julkas that if they were sincere about a resolution, reduction of the sanctions and the interests of the School District, they should try to resolve the situation and not proceed with an additional FOIA request that would cost the District $10,000. (Ex. B, Pl. Ex. 139 at P10066; Trial Tr., Vol. 4-B at 31:4-11).

Unsurprisingly, Plaintiffs argued that Mr. Hanzlik's words amounted to "threats" that the Julkas withdraw their grievance and FOIA requests, or Mr. Hanzlik would "come after" them for $100,000. Mr. Hanzlik explicitly denied these accusations during trial (Trial Tr., Vol. 4-B at 34:14-35:7; 96:16-97:4), and the correspondence itself makes clear that no threat was made nor was it written with ill-intent. (Ex. B, Pl. Ex. 139 at P10063-P10066). Nonetheless, even if a reasonable person could construe Mr. Hanzlik's letter as threatening, the conduct does not amount to extreme and outrageous conduct that exceeds all bounds of public decency. *Kolegas v. Heftel Broadcasting Corp.*, 154 Ill. 2d 1, 20-21 (1992) ("[i]t is clear that 'mere insults, indignities, *threats*, annoyances, petty oppressions or other trivialities' do not qualify as outrageous conduct.") (emphasis added).

Moreover, it is unrebutted that Mr. Hanzlik reasonably believed that his objectives were legitimate. Mr. Hanzlik testified that it was part of his job, as Board President, to uphold the

9

integrity of the District and address financial issues that would impact the community. (Trial Tr., Vol. 4-A at 104:23-24; Vol. 4-B at 93:17-94:5). Mr. Hanzlik explained that because taxpayers pay the bills for the School District, the Board has a legal responsibility to protect the value of the District. (Trial Tr., Vol. 4-B at 93:17-94:5). The evidence is clear that Mr. Hanzlik was trying to do his job as Board president and reach a resolution with the Julkas while keeping the financial concerns of the school in mind. Mr. Hanzlik's only motivation was to carry out his obligations owed to the District community, and as a matter of law, his conduct was not "extreme and outrageous" behavior that exceeded all "bounds of decency." It should also not be lost on this Court that the School District never requested fees from the Julkas, and the School District complied with every single FOIA request made by the Julka family. (Trial Tr., Vol. 4-B at 97:7-12).

Lastly, Plaintiffs did not present sufficient evidence to prove that Mr. Hanzlik engaged in extreme and outrageous conduct by publicizing the matter. The only evidence Plaintiffs presented at trial to support their claim was that a letter was sent out to all District families about the occurrence, and that Mr. Hanzlik made a comment to a news journalist about the occurrence. (Trial Tr., Vol. 4-A at 105:16-119:7; Vol. 4-B at 39:12-44:17). In regards to the letter, Mr. Hanzlik did not make the decision to send out the letter and, additionally, it did not identify the Julka family by name. (*See* Exhibit C, Plaintiffs' Trial *Knysak*, 273 Ill. App. 3d at 371 *Knysak*, 273 Ill. App. 3d at 371 32; Trial Tr., Vol. 4-A at 112:14-22, 113:13-17). Further, when asked why the letter was sent to all District families, Mr. Hanzlik explained that the cheating allegations "spread like wildfire" amongst the community, and because the District could not answer their questions at this point, the letter was sent by Dr. Wennstrom in an attempt to quiet the community and assure the community the District would resolve the issue. (Trial Tr., Vol. 4-

B at 79:2-80:3). Thus, the evidence showed that the letter was not sent to District families with ill-intent, and was instead sent in an attempt to control the situation. It is undisputed that Schools can and must communicate with the community and owe an obligation to the communities they serve. Sending a letter stating that a situation was being dealt with is not extreme and outrageous conduct, especially as it relates to Mr. Hanzlik, and especially where the letter did not identify the Julkas. (Ex. C, Pl. Ex. 32).

Moreover, Plaintiff did not prove that Mr. Hanzlik acted in an extreme and outrageous manner in responding to a request for comment by the media. In commenting, Mr. Hanzlik did not identify the Julkas by name, nor did he say anything disparaging about the Julkas. Mr. Hanzlik simply stated that the School's investigation revealed there was an effort by two parents to cheat, children were prepped with the materials, that neither family acknowledged wrongdoing, and that the reputation of the school could not be jeopardized by allowing the families to participate in further contests. (Vol. 4-B at 41:10-15, 43:16-44:7). Importantly, Mr. Hanzlik did not seek any reporters out; rather, a reporter contacted Mr. Hanzlik after the Julkas filed a lawsuit in which they publicly attached private letters the school sent to the family that detailed the facts of the investigation—a fact that Rahul Julka admitted at trial. (Trial Tr., Vol. 3-A at 5:24-6:5, 18:3-24, 20:15-22:18; Vol. 4-B at 44:8-16). During trial, Dr. Julka admitted that he was not aware of any newspapers picking the story up until after he publicly filed the lawsuit and corresponding documents. (Trial Tr. at Vol. 3-A at 22:6-18). The conduct described above falls well-short of the type of extreme and outrageous conduct required to succeed on an intentional infliction of emotional distress claim, and judgment should be entered in favor of Mr. Hanzlik.

### B. The Board is also entitled to judgment as a matter of law.

For the same reasons set forth in subsection A above, judgment for the Board is also merited. Additionally, there is no evidence that the Board, as a whole, engaged in extreme and outrageous conduct in performing a biased grievance process or in upholding the sanctions against the Julkas. Instead, the Board took additional and unrequired measures to try to ensure that the grievance process was fair. (Pl. Ex. 57; Trial Tr., Vol. 4-A at 101:3-25, 102:1-17, 104:14-17; Vol. 4-B at 15:20-15, 17:11-18, 82:22-83:2, 83:3-15, 84:10-13). Nonetheless, Plaintiffs' attorney attempted to establish that because Ms. Massey, the attorney investigating the grievance, worked for the law firm the District previously retained for unrelated matters, the investigation was unfair and biased.

However, the evidence showed that Ms. Massey conducted a fair and impartial investigation. For example, Ms. Massey thoroughly investigated the grievance by interviewing eleven witnesses and reviewing documentation provided by all parties involved. (Trial Tr., Vol. 4-B at 88:23-89:1, 92:19-93:12, 121:9-124:9; 127:23-136:6). Ms. Massey thereafter authored a lengthy report that detailed her findings and recommendations, which was provided to the School Board for consideration. (Trial Tr., Vol. 4-B at 90:7-17, 93:4-12). Before voting, every member of the Board reviewed Ms. Massey's report. (Trial Tr., Vol. 4-B at 90:7-17). During its meeting, the Board reviewed the report, reviewed every piece of evidence, and answered questions. (Trial Tr., Vol. 4-B at 93:4-12). Mr. Hanzlik testified that in doing so, the Board wanted to confirm that Ms. Massey's findings were consistent with Superintendent Wennstrom's findings. (Trial Tr., Vol. 4-B at 90:15-17). Six of the seven board members were present at the meeting and, in

relying on Ms. Massey's report, the Board unanimously voted to uphold the sanctions. (Trial Tr., Vol. 4-B at 89:11-15, 90:21-23).

Mr. Hanzlik testified that the Board upheld the sanctions because it was clear that Mrs. Julka intended to cheat on the Geo Bee exam. (Trial Tr., Vol. 4-B at 91:14-21). Mr. Hanzlik felt that the restrictions were necessary because it was either restrict all of the families involved, or shut down the contests entirely. (Trial Tr., Vol. 4-B at 91:23-92:18). However, the Board decided that if they were to shut down the whole contest and other families thought the contests were shut down because of the Julkas, it would actually make their lives more difficult than if they were to only restrict the Julkas. (Trial Tr., Vol. 4-B at 92:10-18). Thus, the evidence is clear that in addition to the interests of the school, the Board also weighed the interests of the Julka family.

Therefore, the Board's conduct in arranging an investigation and upholding the sanctions does not amount to extreme and outrageous conduct. Importantly, this Court has previously found that there is no protected right in the grievance process. (Doc. 78 at p. 14). Regardless, the evidence showed that the Board carefully considered every piece of evidence and evaluated whether there were any inconsistencies between Superintendent Wennstrom's findings and Ms. Massey's findings.

### III. The Moving Defendants did not intend to cause or know there was a high probability that their conduct would cause Dr. Julka severe emotional distress.

Finally, to establish an IIED claim under Illinois law, a plaintiff must also establish that the defendant intended to cause or knew there was a high probability that the conduct would cause severe emotional distress. *Sabol*, 804 F. Supp. 2d at 758; *Warfield v. City of Chicago*, 565 F. Supp. 2d 948, 965 (N.D. Ill. 2008). Plaintiffs did not present any evidence showing that Mr. Hanzlik or the Board intended to cause Dr. Julka severe emotional distress, or that they knew there was a high probability their conduct would cause Dr. Julka severe emotional distress. (*See*

*generally*, Trial Tr. at Vols. 1, 2, 3, 4). Importantly, Plaintiffs' counsel failed to question Mr. Hanzlik on what Mr. Hanzlik's intent was, or if he knew of the impact his or the Board's actions would have on Dr. Julka. (Trial Tr., Vol. 4-A at 93:19 through Vol. 4-B at 44:17, 99:18-102:16). However, when questioned on direct examination, Mr. Hanzlik testified that he did not act with ill-will and that he did not intend to cause the Julkas any harm or distress. (Trial Tr., Vol. 4-B at 81:3-11).

Further, the evidence presented showed that Mr. Hanzlik and the Board did what they could to avoid putting undo pressure on the Julkas. (Trial Tr., Vol. 4-B at 92:10-18). For example, Mr. Hanzlik considered shutting down the academic contests entirely for some time. (Trial Tr., Vol. 4-B at 92:9-10). As the testimony at trial revealed, these academic competitions were very important to some families in the District. (Trial Tr., Vol. 2-A at 94:13-20). Mr. Hanzlik testified that the Board was concerned that if these academic competitions were canceled and the community believed the Julkas were partly to blame for that, it would make their lives more difficult. (Trial Tr., Vol. 4-B at 92:10-18). For these reasons, and the reasons set forth in Sections I and II, *supra*, Plaintiffs failed to prove that Mr. Hanzlik or the Board intended to cause or knew there was a high probability that their conduct would cause Dr. Julka severe emotional distress. Therefore, judgement should be entered in favor of Mr. Hanzlik and the Board on Dr. Julka's IIED claim.

## CONCLUSION

For the foregoing reasons, the Board of Education of Butler School District 53 and Alan Hanzlik request this Court enter judgment in their favor pursuant to Rule 50 of the Federal Rules of Civil Procedure and for all other relief this Court deems just.

Respectfully submitted,

BOARD OF EDUCATION OF BUTLER
SCHOOL DISTRICT 53 and ALAN HANZLIK

/s/ Darcy L. Proctor
One of the Attorneys for Defendants

Darcy L. Proctor – ARDC #6199731
dlproctor@wmlaw.com
Rachel S. Nevarez –ARDC # 6304120
rsnevarez@wmlaw.com
Kelly N. Flavin –ARDC # 6325621
knflavin@wmlaw.com
Wiedner & McAuliffe, Ltd.
1 N. Franklin Street, Suite 1900
Chicago, Illinois 60606
P: (312) 855-1105
F: (312) 855-1792

## CERTIFICATE OF SERVICE

I, Darcy L. Proctor, certify that I electronically filed **DEFENDANTS' RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW** with the Clerk of the Court using the CM/ECF system on January 17, 2020. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties that have not filed their appearances will receive this notice via regular e-mail. Parties may access this filing through the Court's electronic system.

/s/ Darcy L. Proctor