IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| A.J. and R.J., minor children, by Rahul Julka, their father and next friend, RAHUL JULKA, and KOMAL JULKA, <br><br> Plaintiffs, <br><br> vs. <br><br> BUTLER ILLINOIS SCHOOL DISTRICT #53, BOARD OF EDUCATION FOR BUTLER ILLINOIS SCHOOL DISTRICT #53, HEIDI WENNSTROM, KELLY VOLIVA, and ALAN HANZLIK, <br><br> Defendants. | Case No. 17 C 2849 |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Rahul Julka and Komal Julka[1] are the parents of two children who, at the relevant time, were elementary school students in Butler School District 53. The two children, A.J. and R.J, were registered to participate in the 2016 National Geographic Bee (GeoBee) hosted by the district. Before the GeoBee was held, it was discovered that Komal had acquired the actual contest questions. This led to the withdrawal of A.J. and R.J. from the GeoBee as well as actions by the District and administrators that led the Julkas to file the present lawsuit.

After a series of pretrial rulings that resulted in the dismissal of some of their

---

[1] The Court will refer to Rahul Julka and Komal Julka by their first names to avoid confusion.

claims, the Julkas proceeded to trial on two claims: a First Amendment retaliation claim and a claim under Illinois law for intentional infliction of emotional distress (IIED). A jury found for Rahul on his IIED claim against the school board and its president but awarded him no damages. The jury found in favor of the defendants on all of the remaining claims. The school board and president have filed a renewed motion for judgment as a matter of law on Rahul's IIED claim. The Julkas have moved for a new trial on both claims.

## Background

The Court's written decision and order on the defendants' motion for summary judgment offers a full factual background. See *Julka v. Butler Ill. Sch. Dist. #53*, No. 17 C 2849, 2019 WL 4014088, at *1-3 (N.D. Ill. Aug. 26, 2019) ("*Summary Judgment Decision*"). The following facts are relevant to the parties' post-trial motions.

In 2016, R.J. and A.J. were both elementary school students in Butler School District 53 and registered to compete in the 2016 GeoBee, an academic competition administered each year by the school district. In January 2016, a few days before the start of the competition, Kelly Voliva, the elementary school principal, Heidi Wennstrom, the district's superintendent, and Alan Hanzlik, the school board president, were informed that Komal had obtained the official contest questions for the upcoming GeoBee. Wennstrom, in consultation with Hanzlik, investigated this allegation. She concluded that it was true and sanctioned the Julkas.

Specifically, on February 8, 2016, Wennstrom sent a letter addressed to Rahul and Komal detailing the findings of her investigation and explaining the sanctions she was imposing. She found that the Julkas had improperly acquired the contest questions

2

and shared them with the Jain family, who also had a child in the school district who was registered to compete in the 2016 GeoBee. Wennstrom's letter to Rahul and Komal stated that "[t]he academic dishonesty and cheating which you and your children engaged [sic] put all of the District students participating in the contest and the District at risk of being banned from current and future National Geographic Bee contests." *Summary Judgment Decision*, 2019 WL 4014088, at *2. Wennstrom prohibited A.J. and R.J. from participating in any Butler School District 53 academic competitions and prohibited the parents from volunteering in any school contests or competitions. Wennstrom testified at trial that she sent a similar letter to the Jains, describing her findings and imposing sanctions. Like the Julka children, the Jain child was prohibited from participating in academic competitions in the district.

That same day, Wennstrom mailed a letter to other families in the school district reporting on her investigation and findings. This letter did not mention the Julkas by name. Wennstrom stated that she had imposed restrictions on those who were involved in the academic dishonesty related to the GeoBee competition, but she did not describe the sanctions.

Rahul and Komal filed a grievance with the school board, challenging Wennstrom's findings and sanctions. The board hired an attorney from the Robbins Schwartz law firm to investigate the grievance. At the conclusion of her investigation, the attorney issued a report recommending that the school board affirm only Wennstrom's findings of misconduct by Rahul and Komal but not her findings regarding cheating by the Julka children. The attorney also recommended affirming the sanctions Wennstrom had imposed. The school board adopted the attorney's recommendations

3

and affirmed Wennstrom's findings of misconduct by the Julka parents and the sanctions imposed upon the family.

In April 2016, Hanzlik wrote to Rahul and Komal, reporting on the grievance investigation, the Robbins Schwartz attorney's findings and recommendations, and the school board's decision. He also noted that "[i]n light of an error" in Wennstrom's February letter, the school board had directed that her letter be revised to delete the reference to academic dishonesty and cheating by the Julka children. Pls.' Mot. and Mem. in Support of a New Trial, Ex. 2, at 7.

In April 2017, the Julkas filed the present suit against the school district, the school board, Hanzlik, Voliva, Wennstrom, the Robbins Schwartz law firm and two of its attorneys, and another family in the school district who had reported that Komal had acquired the GeoBee contest questions. The defendants moved to dismiss the Julkas' complaint for failure to state a claim, and the Court dismissed several of the claims and the Robbins Schwartz defendants. *Julka v. Butler Ill. Sch. Dist. #53*, No. 17 C 2849, 2018 WL 1469005, at *12 (N.D. Ill. Mar. 26, 2018) ("*Motion to Dismiss Decision*"). The defendants subsequently moved for summary judgment on the remaining claims. The Court granted summary judgment for the defendants on all claims against the other family and the Julkas' claim for injunctive relief; it otherwise denied the motion. *See Summary Judgment Decision*, 2019 WL 4014088, at *8.

In December 2019, the Julkas proceeded to trial on R.J.'s claim against the school board for retaliation in violation of his First Amendment rights and all four plaintiffs' IIED claims against the school board, Wennstrom, Voliva, and Hanzlik. After a five-day trial, a jury found for the defendants on all counts but one: Rahul's IIED claim

4

against Hanzlik and the school board. Although the jury found in Rahul's favor on that claim, it awarded him no damages.

Prior to the jury verdict, the defendants had moved under Federal Rule of Civil Procedure 50(a) for judgment as a matter of law, and the Court took the motion under advisement. Hanzlik and the school board have renewed this motion as to Rahul's IIED claim against them. The Julkas have moved for a new trial on both the IIED and First Amendment retaliation claim.

## Discussion

**A.     Renewed motion for judgment as a matter of law**

Hanzlik and the school board have moved for judgment as a matter of law on Rahul's IIED claim against them. Under Rule 50, judgment as a matter of law is proper only if "a reasonable jury would not have a legally sufficient evidentiary basis to find as the actual jury did." *Ruiz-Cortez v. City of Chicago*, 931 F.3d 592, 601 (7th Cir. 2019) (quoting Fed. R. Civ. P. 50(a)) (internal quotation marks omitted). "This is a high bar." *Id.* In ruling on this motion, a court must "give the nonmovant the benefit of every inference while refraining from weighing . . . the credibility of the evidence and testimony." *Id.* In ruling on a Rule 50 motion following a jury verdict, a court reviews the entire record and "disregard[s] all evidence favorable to the movant that the jury is not required to believe." *Id.* It is appropriate to overturn a jury verdict only if "no rational jury could have found for the nonmovant." *Id.*

Under Illinois law, an IIED claim has three elements: (1) extreme and outrageous conduct by the defendant; (2) intent by the defendant to inflict severe emotional distress or knowledge of "at least a high probability" that conduct would cause severe distress;

5

and (3) severe emotional distress experienced by the plaintiff. *Honaker v. Smith*, 256 F.3d 477, 490 (7th Cir. 2001) (applying Illinois law). The defendants argue that they are entitled to judgment as a matter of law because the evidence was not legally sufficient to establish any of these three elements.

The first element, extreme and outrageous conduct, requires that the defendant's actions "go beyond all bounds of decency and be considered intolerable in a civilized society." *Id.* Whether conduct is extreme and outrageous is "based on the facts of the particular case." *Id.* A defendant's conduct may be deemed outrageous if it is directed to an individual that the defendant knows is particularly susceptible to emotional distress. *Schweihs v. Chase Home Fin., LLC*, 2016 IL 120041 ¶ 52, 77 N.E.3d 50, 63. "The extreme and outrageous nature of the conduct may arise from the defendant's abuse of some position that gives him authority over the plaintiff or the power to affect the plaintiff's interests." *Id.*

As the Court explained in its decision denying the defendants' motion for summary judgment on the IIED claim, a jury could reasonably conclude that the actions of Hanzlik and the school board constituted extreme and outrageous conduct. *See Summary Judgment Decision*, 2019 WL 4014088, at *6. These two defendants are school authorities—the "types of individuals who in exercising their authority can become liable for extreme abuses of their positions." *Doe v. Calumet City*, 161 Ill. 2d 374, 393, 641 N.E.2d 498, 507 (1994). The sanctions they imposed and their public accusations of cheating were directed, in part, to the Julka children, who Hanzlik and the board knew had heightened susceptibility to emotional distress due to their young age. Additionally, Hanzlik had threatened to sue the Julkas to recover $100,000 in

litigation expenses. This evidence was legally sufficient to support the jury's finding that the conduct of Hanzlik and the school board was extreme and outrageous.

Hanzlik and the school board argue, however, that the evidence was insufficient to support a finding that their conduct specifically was extreme and outrageous. They argue that they were not the defendants who imposed the sanctions on the Julkas. That contention is contrary to the evidence. After the Julkas filed the grievance challenging Wennstrom's sanctions, Hanzlik and the board affirmed them.

As for the public statements about the Julkas and Hanzlik's letter threatening litigation, the defendants point to evidence—primarily Hanzlik's testimony—suggesting that these actions were not extreme and outrageous. The defendants' reliance on this evidence is unavailing, because in ruling on their renewed Rule 50 motion, the Court must disregard all evidence favorable to the defendants, refrain from weighing the evidence, and give Rahul the benefit of every reasonable inference. *See Ruiz-Cortez*, 931 F.3d at 601. As previously discussed, the jury reasonably concluded that the actions by Hanzlik and the school board directed to Rahul constituted extreme and outrageous conduct.

The defendants argue that even if their conduct was extreme and outrageous, the evidence was legally insufficient to support the jury's finding that Rahul experienced severe emotional distress. To establish this element of an IIED claim, the plaintiff must show that his distress was so severe that "no reasonable man could be expected to endure it." *Honaker*, 256 F.3d at 495 (quoting *Welsh v. Commonwealth Edison Co.*, 306 Ill. App. 3d 148, 155, 713 N.E.2d 679, 684 (1999)). Rahul testified at trial that the defendants' actions left him feeling shocked and humiliated. Additionally, the stress and

7

behavioral changes he observed in R.J. and A.J. in the months following the filing of the grievance made Rahul feel hurt, disappointed, and frustrated.

The defendants first argue that Rahul's distress was not sufficiently severe because he failed to provide any evidence that he sought medical treatment. This argument lacks merit. "[N]either physical injury nor the need for medical treatment is a necessary prerequisite to establishing severe emotional distress." *Honaker*, 256 F.3d at 496.

Next, the defendants analogize to several cases in which Illinois courts have ruled that a plaintiff's emotional distress was not sufficiently severe to be actionable. *See Adams v. Sussman & Hertzberg, Ltd.*, 292 Ill. App. 3d 30, 39, 684 N.E.2d 935, 942 (1997); *Knysak v. Shelter Life Ins. Co.,* 273 Ill. App. 3d 360, 371, 652 N.E.2d 832, 840 (1995); *Khan v. Am. Airlines*, 266 Ill. App. 3d 726, 733, 639 N.E.2d 210, 215 (1994). Those cases are distinguishable, however, because in each, the court also concluded that the defendant's conduct was not extreme and outrageous. Although "severe distress must be proved" for an IIED claim under Illinois law, "in many cases the extreme and outrageous character of the defendant's conduct is in itself important evidence that the distress has existed." *Honaker*, 256 F.3d at 496 (noting that Illinois courts have tended to merge the conduct and distress elements of IIED such that the more severe the conduct, the less proof of severe distress required); *see also Feltmeier v. Feltmeier*, 207 Ill. 2d 263, 276, 798 N.E.2d 75, 84 (2003). Hanzlik and the school board were in positions of authority over Rahul's children, and their sanctions and public accusations of cheating were partly aimed at those children, who were especially susceptible to emotional distress due to their age. The jury could reasonably conclude

8

that the school authorities targeting Rahul's minor children with a baseless attack was sufficiently extreme and outrageous to give rise to severe distress meeting the required threshold . *See Honaker*, 256 F.3d at 496; *see also Fox v. Hayes*, 600 F.3d 819, 842 (7th Cir. 2010) (limited evidence of emotional distress legally sufficient to support jury verdict for plaintiff on IIED claim where defendant had abused his authority and knew plaintiff was especially susceptible to emotion distress).

Finally, Hanzlik and the school board argue that the evidence was legally insufficient to support the jury's finding that they had the requisite intent for an IIED claim. Illinois courts have "generally found this element to be satisfied either when a defendant's actions, by their very nature, were likely to cause severe distress or when the defendant knew that a plaintiff was particularly susceptible to such distress and that, because of this susceptibility, the defendant's actions were likely to cause it to occur." *Honaker*, 256 F.3d at 494 & n.16. Some of the defendants' conduct—public accusations of cheating and prohibition from participating in any academic competition in the school district—was directed to Rahul's children, A.J. and R.J., who had heightened susceptibility to distress due to their age. Though the claim at issue was brought by Rahul, any reasonable person in the defendants' position would understand that an attack on one's children by a person in a position of authority—particularly a public accusation of cheating—would be highly likely to cause the children's parents severe distress. With this in mind, the jury could have reasonably concluded that Hanzlik and the school board, who knew that their sanctions and public statements targeted Rahul's minor children, acted with knowledge of "at least a high probability" that their conduct would cause distress. *See Honaker*, 256 F.3d at 490.

9

For these reasons, Hanzlik and the school board are not entitled to judgment as a matter of law on Rahul's IIED claim.

**B.     Plaintiffs' motion for a new trial**

The Julkas have moved for a new trial, arguing that they did not receive a fair trial and the jury's verdict was against the manifest weight of the evidence. The Court will address the Julkas' arguments regarding the fairness of the trial first and their arguments on the weight of the evidence second.

   **1.     Fairness of the trial**

The Julkas request a new trial under Federal Rules of Civil Procedure 59(a) and 60(b)(3). A new trial is appropriate under Rule 59(a) "if the trial was in some way unfair to the moving party." *Martinez v. City of Chicago*, 900 F.3d 838, 844 (7th Cir. 2018). A court may grant a motion for a new trial under Rule 59(a) based on misconduct by the opposing party or counsel, but in order to obtain this "dramatic relief," the movant must demonstrate that the misconduct prejudiced him. *Brandt v. Vulcan, Inc.*, 30 F.3d 752, 758 (7th Cir. 1994).

Grant of a motion for a new trial under Rule 60 is "limited to extraordinary situations where a judgment is the inadvertent product of special circumstances and not merely the erroneous application of law." *Kennedy v. Schneider Elec.*, 893 F.3d 414, 419 (7th Cir. 2018) (quoting *Russell v. Delco Remy Div. of Gen. Motors Corp.*, 51 F.3d 746, 749 (7th Cir. 1995)). Such circumstances include fraud, misrepresentation or misconduct by the opposing party that "prevented the party seeking relief from fully and fairly presenting his meritorious case at trial." *Id.* (quoting *Wickens v. Shell Oil Co.*, 620 F.3d 747, 759 (7th Cir. 2010)).

10

The Julkas first contend that they were denied a fair trial because they were unfairly surprised by the defendants' argument that the statement in Wennstrom's February 2016 letter that the Julka children had cheated was an error. The defendants first point out, correctly, that the Julkas forfeited this point by failing to raise it during the trial. *See Christmas v. City of Chicago*, 682 F.3d 632, 640 (7th Cir. 2012). But even if the Julkas had not forfeited this argument, it lacks merit. They had ample notice prior to trial that this was the defendants' position. Hanzlik's April 2016 letter to the Julkas explained that Wennstrom's letter included an erroneous finding that the Julka children had cheated; he added that this finding would be deleted from the letter. Additionally, on May 2016, the school's attorney wrote to the Julkas' attorney informing him that the version of Wennstrom's letter that the Julkas had received in February 2016 was "incorrect." Defs.' Resp. in Opp. to Pls.' Mot. for a New Trial, Ex. D. The school's attorney attached an edited version of Wennstrom's letter that omitted any reference to cheating by the Julka children, and she noted that this was the "corrected version" of the letter that would be added to the Julka children's student files. *Id.*

The Julkas also contend they were unfairly surprised by Wennstrom's testimony at trial that the sanction prohibiting A.J., R.J., and the Jain child from participating in the GeoBee was necessary because the Julkas had shared their access to the contest questions with the Jain family. Again, the Julkas have forfeited this point because they failed to raise it during trial. *See Christmas*, 682 F.3d at 640. Regardless, their argument lacks merit. Wennstrom had testified during her pretrial deposition that she prohibited the three children from participating in the GeoBee because both the Jain and Julka families had acquired the contest questions prior to the event.

11

The Julkas argue, however, that once the defendants raised the issue of cheating by the Jain family at trial, the Julkas were unfairly "forced to litigate the Jain case . . . without any documents concerning [that] case." Pls.' Mot. and Mem. in Support of a New Trial at 13. The Julkas argue that because the Court had granted a motion in limine excluding a document produced in the Jains' separate lawsuit against the defendants, the Julkas were led to believe that the issue of the Jains' conduct would not be raised during their trial. But the document that the defendants sought to exclude had nothing to do with the Jains' conduct with respect to the GeoBee—it was a privilege log identifying confidential communications between the defendants and the Robbins Schwartz law firm. The Julkas' argument about being misled lacks support.

Finally, the Julkas argue that they were denied a fair trial because the defendants engaged in discovery misconduct and presented false testimony. Specifically, they contend that Voliva falsely testified at trial that she met with Rahul and Komal on June 3, 2015 to discuss academic misconduct by R.J. The Julkas dispute that this meeting occurred, pointing to evidence showing that Rahul could not have been at the school on that date. Additionally, they argue that the defendants violated Federal Rule of Civil Procedure 26(e) by failing to produce, prior to trial, a page from Voliva's planner showing that a meeting with the Julkas was on her schedule for June 3, 2015.

Even assuming that Voliva presented false testimony and that the failure to produce her planner entry was discovery misconduct, the Julkas have not established that this prejudiced their case. *See Whiting v. Westray*, 294 F.3d 943, 944 (7th Cir. 2002) (party moving for a new trial on misconduct grounds "must show both that misconduct occurred and that it prejudiced their case"). Voliva testified during her

12

deposition that she met with Rahul and Komal on June 3, 2015. Thus, the Julkas had notice of her likely trial testimony on this point, and they could have elicited testimony from Rahul at trial regarding his presence at the claimed June 3 meeting. They did not do so. Nor did they object to the admission of Voliva's agenda page at trial. On this record, they cannot successfully claim that Voliva's testimony and planner entry prejudiced them at trial or that these events entitle them to a new trial.

In sum, the Julkas have failed to establish that they were denied a fair trial.

### 2. Manifest weight of the evidence

The Julkas argue that they are entitled to a new trial under Rule 59(a) because the jury's verdicts on both their First Amendment retaliation and IIED claims were against the manifest weight of the evidence. A court's "narrow role" in ruling on a motion challenging a jury verdict as against the manifest weight of the evidence is to "determine if a reasonable basis exists in the record to support the verdict." *Lewis v. McLean*, 941 F.3d 886, 893 (7th Cir. 2019). The Court must view the evidence neutrally and may set aside the jury's verdict only if it determines that "no rational jury could have rendered it." *Id.*

In R.J.'s First Amendment retaliation claim, he alleged that the defendants inserted disciplinary documents into his student file in retaliation for the Julkas filing their grievance. This claim is largely based on evidence that a 2015 disciplinary report that was not part of R.J.'s student file produced in April 2016 appeared in a version of his file produced the following month. R.J. contends that this report was added to his file during the time the Julkas were litigating their grievance. At trial, the defendants presented evidence that the student file turned over to the Julkas in April 2016 was

13

R.J.'s permanent file, which does not include disciplinary records, as they are part of students' temporary files. The defendants produced R.J.'s temporary file in May 2016, after the Julkas clarified that they were seeking both the temporary and permanent files. Thus, the defendants explained that the 2015 disciplinary record was missing from R.J.'s student file produced in April 2016 because that was R.J.'s permanent file, not his temporary file. This evidence provides a reasonable basis to support the jury's verdict that the appearance of the 2015 disciplinary record in R.J.'s file was not a retaliatory act.

As for the IIED claims of Komal and the Julka children, the jury's verdict in favor of the defendants is likewise reasonably supported by the record. The jury heard evidence from all of the parties, including testimony from Komal, A.J., and R.J., and concluded that it was insufficient to support their IIED claims. It was the jury's job "to figure out who[] [was] telling the truth," and it would be "an invasion of the jury's province to grant a new trial merely because the evidence was sharply in conflict." *Whitehead v. Bond*, 680 F.3d 919, 928 (7th Cir. 2012).

There is a reasonable basis in the record to support the jury's verdict in favor of the defendants on both R.J's First Amendment retaliation claim and the IIED claim of Komal and the Julka children. The Court denies the Julkas' motion for a new trial.

## Conclusion

For the foregoing reasons, the Court denies the defendants' motion for judgment as a matter of law [dkt. no. 270] and the Julkas' motion for a new trial [dkt. no. 277].

                                              _____
                                                   MATTHEW F. KENNELLY
Date: July 13, 2020                                    United States District Judge